UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

CABLEVISION SYSTEMS CORPORATION            :
and CSC HOLDINGS, LLC,                      :  Case No.: 13 CIV 1278 (LTS)(JLC)
                                            :
                  Plaintiffs,               :
                                            :
            vs.                             :
                                            :
VIACOM INTERNATIONAL INC. and BLACK         :
ENTERTAINMENT TELEVISION LLC,               :
                                            :
                  Defendants.               :
-----------------------------------------------------------------x

**REPLY MEMORANDUM OF LAW OF VIACOM INTERNATIONAL AND
BLACK ENTERTAINMENT TELEVISION IN SUPPORT OF
THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Joseph F. Tringali
Peri L. Zelig
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone:   (212) 455-2000

*Attorneys for Defendants*

Kenneth R. Logan,

*Of Counsel.*

**TABLE OF CONTENTS**

Page

ARGUMENT ...................................................................................................................1

I.    CABLEVISION IS REQUIRED TO PLEAD FORECLOSURE OF
      COMPETITION ....................................................................................................1

II.   CABLEVISION DOES NOT PLEAD FORECLOSURE OF COMPETITION ...............7

III.  CABLEVISION DOES NOT PLEAD PLAUSIBLE MARKETS ...................................10

IV.   CABLEVISION'S REQUEST FOR SPECIAL EQUITABLE RELIEF SHOULD
      BE STRICKEN ...................................................................................................13

CONCLUSION ...............................................................................................................15

# TABLE OF AUTHORITIES

Page

## Cases

*305 E. 24th Owners Corp. v. Parman Co.*, 714 F. Supp. 1296
(S.D.N.Y. 1989) ...................................................................................................3, 5

*Alternative Electrodes, LLC v. Empi, Inc.*, 597 F. Supp. 2d 322
(E.D.N.Y. 2009) ........................................................................................................10

*Bayer Schera Pharma AG v. Sandoz, Inc.*, Nos. 08
Civ.03710(PGG), 08112(PGG), 2010 WL 1222012 (S.D.N.Y.
Mar. 29, 2010) ...........................................................................................................12

*Belfiore v. N.Y. Times*, 654 F. Supp. 842 (D. Conn. 1986) ...........................................12

*Brantley v. NBC Universal*, 675 F.3d 1192 (9th Cir. 2012) ....................................7, 8, 9

*Cancall PCS, LLC v. Omnipoint Corp.*, No. 99 CIV. 3395 (AGS),
2001 WL 293981 (S.D.N.Y. Mar. 26, 2001) ....................................................3, 4, 5

*Carell v. Shubert Org.*, 104 F. Supp. 2d 236 (S.D.N.Y. 2000) ....................................10

*Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230 (2d Cir. 2008) ....................10, 11

*Coniglio v. Highwood Servs.*, 495 F.2d 1286 (2d Cir. 1974) ..................................3, 4, 5

*Discovision Assocs. v. Disc Mfg., Inc.*, Nos. Civ. A. 95-21-SLR,
95-345-SLR, 1997 WL 309499 (D. Del. Apr. 3, 1997)..............................................8

*E&G Gabriel v. Gabriel Bros. Inc.*, No. 93 CIV. 0894 (PKL), 1994
WL 369147 (S.D.N.Y. July 13, 1994) ......................................................................10

*E&L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23 (2d Cir.
2006) .....................................................................................................................3, 5, 7

*Friedman v. Adams Russell Cable Servs.-N.Y., Inc.*, 624 F. Supp.
1195 (S.D.N.Y. 1986) ............................................................................................3, 4

*Global Disc. Travel Servs. v. Trans World Airlines*, 960 F. Supp.
701 (S.D.N.Y. 1997) ................................................................................................10

*Gonzalez v. St. Margaret's Hous. Dev. Fund Corp.*, 880 F.2d 1514
(2d Cir. 1989) ......................................................................................................3, 5, 8

*H.L. Moore Drug Exch. v. Eli Lilly & Co.*, No. 76 Civ. 2817
(RWS), 1980 WL 1959 (S.D.N.Y. Nov. 21, 1980) ...................................................14

*Hack v. President and Fellows of Yale Coll.*, 237 F.3d 81 (2d Cir. 2000) ........................................................................................................3

*In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ..................................4

*In re Set-Top Cable Television Box Antitrust Litig.*, Nos. 08 MD 1995, 08 Civ. 7616 (PKC), 2011 WL 1432036 (S.D.N.Y. Apr. 8, 2011) ........................................................................................................3

*In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ........................................................................................................4

*In re Visa Check/Mastermoney Antitrust Litig.*, No. 96-CV-5238 (JG), 2003 WL 1712568 (E.D.N.Y. Apr. 1, 2003) ............................4

*In re Wireless Tel. Servs. Antitrust Litig.*, 385 F. Supp. 2d 403 (S.D.N.Y. 2005) ........................................................................................................4

*Int'l Salt Co. v. United States*, 332 U.S. 392 (1947) ...................................14

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984) ............................2, 3, 7

*Madison Square Garden, L.P. v. National Hockey League*, No. 07 CV 8455(LAP), 2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008) ..............15

*Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465 (S.D.N.Y. 2001) ..........................10

*MCA Television Ltd. v. Pub. Interest Corp.*, 171 F.3d 1265 (11th Cir. 1999) ........................................................................................................8

*Moccio v. Cablevision Sys. Corp.*, 208 F. Supp. 2d 361 (E.D.N.Y. 2002) ........................................................................................................2

*N. Pac. Ry. Co. v. United States*, 356 U.S. 1 (1958) ...................................6

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344 (S.D.N.Y. 2012) ................................................................10

*Nobody in Particular Presents, Inc. v. Clear Channel Commc'ns, Inc.*, 311 F. Supp. 2d 1048 (D. Colo. 2004) ..................................................12

*Re-Alco Indus. Inc. v. Nat'l Ctr. for Health Educ., Inc.*, 812 F. Supp. 387 (S.D.N.Y. 1993) ........................................................................10

*Rome Ambulatory Surgical Ctr. LLC v. Rome Mem'l Hosp. Inc.*, 349 F. Supp. 2d 389 (N.D.N.Y. 2004) ........................................................3

*Roy B. Taylor Sales Inc. v. Hollymatic Corp.*, 28 F.3d 1379 (5th Cir. 1994) ........................................................................................................7

iii

*Shaw v. Rolex Watch, U.S.A., Inc.*, 673 F. Supp. 674 (S.D.N.Y. 1987) ........................................................................................10

*Simon-Whelan v. Andy Warhol Found. for the Visual Arts, Inc.*, No. 07 CIV. 6423(LTS), 2009 WL 1457177 (S.D.N.Y. May 26, 2009) ..............................................................................................11

*Smith Mach. Co. v. Hesston Corp.*, 878 F.2d 1290 (10th Cir. 1989) ...........................................8

*Smugglers Notch Homeowners' Ass'n v. Smugglers' Notch Mgmt. Co.*, 414 F. App'x 372 (2d Cir. 2011) .........................................................3

*Solent Freight Servs. v. Alberty*, 914 F. Supp. 2d 312 (E.D.N.Y. 2012) ..........................................................................................3

*Subsolutions, Inc. v. Doctor's Assocs. Inc.*, 436 F. Supp. 2d 348 (D. Conn. 2006) ................................................................................3

*Synergetics USA, Inc. v. Alcon Labs., Inc.*, No. 08 CIV. 3669 (DLC), 2009 WL 435299 (S.D.N.Y. Feb. 23, 2009) ............................3

*Telecor Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 305 F.3d 1124 (10th Cir. 2002) .....................................................................................11

*Theatre Party Assocs. Inc. v. Shubert Org.*, 695 F. Supp. 150 (S.D.N.Y. 1988) .................................................................................10

*Trans Sport, Inc. v. Starter Sportswear, Inc.*, No. 88-CV-1292, 1989 WL 29454 (N.D.N.Y. Mar. 21, 1989) ....................................13

*United Magazine Co. v. Murdoch Magazines Distrib.*, 146 F. Supp. 2d 385 (S.D.N.Y. 2001) .................................................................3, 10

*United States v. Glaxo Group Ltd.*, 410 U.S. 52 (1973) .................................................14

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) .....................................8

*United States v. Visa U.S.A., Inc.*, 163 F. Supp. 2d 322 (S.D.N.Y. 2001) .............................................................................................11, 12

*Vitale v. Marlborough Gallery*, No. 93 CIV. (PKL) 6276, 1994 WL 654494 (S.D.N.Y. July 5, 1994) .........................................................10

*Yentsch v. Texaco, Inc.*, 630 F.2d 46 (2d Cir. 1980) ....................................................3

## Other Authorities

IX Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law (3d ed. 2011) ........................................................................................................5

Restatement (Second) Of Contracts (1981)......................................................................................16

Viacom's opening memorandum ("Viacom Mem.") demonstrated that Cablevision's Amended Complaint does not allege that any competing programmer has been (or could be) foreclosed from any television programming market as a result of the alleged tying.  To the contrary, Cablevision's own allegations, together with its plentiful public admissions, concede that the programming market is highly competitive with numerous distribution outlets reaching consumers and numerous carriage options for independent programmers.  Obviously aware that it has not, and cannot, show foreclosure, Cablevision tries to evade this prerequisite to a tying claim by labeling it as a *per se* restraint and wrongly asserting that it thereby need not allege any anticompetitive effects.  But precedent from this and other circuits as well as that of the Supreme Court holds that foreclosure is a required element of a tying claim, even in *per se* cases, a decisive point which Cablevision itself has championed.

Cablevision's opposition ("Pls.' Mem.") also does nothing to rehabilitate its implausible alleged product markets.  Courts routinely reject market definitions based on single-brands, and the alternative gerrymandered markets that Cablevision has invented are unsupported by either factual allegations or common sense.  Cablevision also does no better at supporting its belated request for judicial intervention for conduct that it alleges has continued for years, or for the Court to slice and dice the 2012 Agreement so that Cablevision keeps only those terms that it likes.

<u>**ARGUMENT**</u>

**I.**    **CABLEVISION IS REQUIRED TO PLEAD FORECLOSURE OF COMPETITION**

Cablevision is required to plead foreclosure of competition caused by the alleged tie, under *either* the *per se* doctrine or the rule of reason.  Cablevision has admitted this.  When consumers in *Brantley* made the same challenge to license agreements like those at issue here,

Cablevision told the Supreme Court:

> The [Ninth Circuit's] decision . . . was correct in concluding that this case, at
> bottom, is a "bundling" or "tying" case and that courts have uniformly required
> plaintiffs in such cases to allege and prove foreclosure. . . .  This Court has
> repeatedly explained the need to demonstrate foreclosure in tying cases, *both
> under the rule of reason and per se doctrine*.

Aug. 23, 2013 Tringali Decl. ("Tringali Decl.") Ex. A (Br. Opp'n) at 10–11 (emphasis added)

(citing *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 16 (1984)).  Cablevision similarly

told the Ninth Circuit:

> [T]his Court should look to pleading and proof requirements in claims
> challenging analogous restraints, such as tying, full-line forcing, block booking,
> and bundling claims, *all of which have required foreclosure of rivals.*

Nov. 8, 2013 Zelig Decl. ("Zelig Decl.") Ex. A (Programmer Answer Br.) at 18 (emphasis

added).[1]  Cablevision has repeated this to courts in this Circuit.  In *Moccio*, Cablevision argued

that plaintiffs' *per se* tying claim should be dismissed because plaintiffs did not sufficiently plead

"injury to competition."  Zelig Decl. Ex. B (*Moccio* Motion To Dismiss) at 13–16.[2]

Consistent with Cablevision's many admissions, this Circuit requires foreclosure for

tying claims, under both the *per se* and rule of reason standards:

> [T]he Second Circuit reiterated [that] . . . a claim for tying that is *per se* unlawful.
> . . require[s] allegations and proof of five specific elements . . . first, a tying and a
> tied product; second, evidence of actual coercion by the seller that forced the
> buyer to accept the tied product; third, sufficient economic power in the tying
> product market to coerce purchaser acceptance of the tied product; *fourth,
> anticompetitive effects in the tied market*; and fifth, the involvement of a "not
> insubstantial" amount of interstate commerce in the "tied" market.

---

[1]   *See also id.* at 29 ("Without exception, in the absence of horizontal collusion, foreclosure of
competitors is the primary concern of every vertical restraint courts have found to violate the
Sherman Act.").  Cablevision and the other distributor defendants joined in the Programmer
Answer Brief.  *See* Tringali Decl. Ex. J (Distributors' Opp'n Br.) at 2.

[2]   The court agreed.  *See Moccio v. Cablevision Sys. Corp.*, 208 F. Supp. 2d 361, 374 (E.D.N.Y.
2002).

*Cancall PCS, LLC v. Omnipoint Corp.*, 99 CIV. 3395 (AGS), 2001 WL 293981, at \*3–4 (S.D.N.Y. Mar. 26, 2001) (emphasis added) (quoting *Hack v. President and Fellows of Yale Coll.*, 237 F.3d 81, 86 (2d Cir. 2000)).  Cablevision's attempt to evade the foreclosure requirement[3] that it has previously embraced is unavailing for multiple reasons.

    *First*, Cablevision's suggestion that *Jefferson Parish* eliminated the foreclosure requirement has been flatly rejected by this Court.  For example, in *Friedman v. Adams Russell Cable Services-New York, Inc.*, the court held that *Jefferson Parish* "strengthened" the requirement that proof of "anticompetitive effect in the tied market in order to make out an illegal tying arrangement" is required for *per se* cases.  Judge Leval wrote:

> While examining a tying arrangement challenged in [*Jefferson Parish*], the Court explained that 'application of the *per se* rule focuses on the probability of anticompetitive consequences.'  The Court further stated that . . . . [w]ithout a showing of actual adverse effect on competition, [plaintiff] cannot make out a case under the antitrust laws . . . .

624 F. Supp. 1195, 1197 (S.D.N.Y. 1986).[4]

    *Second*, the language Cablevision relies on from *In re Wireless Telephone Services*

---

[3]   *See, e.g.*, *Gonzalez v. St. Margaret's Hous. Dev. Fund.*, 880 F.2d 1514, 1516–17 (2d Cir. 1989) (*per se* tying requires anticompetitive effects); *Yentsch v. Texaco*, 630 F.2d 46, 58 (2d Cir. 1980) (foreclosure required for a *per se* claim); *United Magazine v. Murdoch Magazines Distrib.*, 146 F. Supp. 2d 385, 399–00 (S.D.N.Y. 2001) (*per se* tying requires anticompetitive effects), *aff'd sub nom. United Magazine v. Curtis Circulation*, 279 F. App'x 14 (2d Cir. 2008); *Solent Freight Servs. v. Alberty*, 914 F. Supp. 2d 312, 310 & n.10 (E.D.N.Y. 2012) (same); *Rome Ambulatory Surgical Ctr. LLC v. Rome Mem'l Hosp.*, 349 F. Supp. 2d 389, 407 (N.D.N.Y. 2004) (same); *see also E&L Consulting v. Doman Indus.*, 472 F.3d 23, 31 (2d Cir. 2006); *Smugglers Notch Homeowners' Ass'n v. Smugglers' Notch Mgmt.*, 414 F. App'x 372, 374 (2d Cir. 2011); *Coniglio v. Highwood Servs.*, 495 F.3d 1286, 1289 (2d Cir. 1974); *In re Set-Top Cable Television Box Antitrust Litig.*, 08 MD 1995, 08 Civ. 7616 (PKC), 2011 WL 1432036, at \*5 (S.D.N.Y. Apr. 8, 2011); *Synergetics USA, Inc. v. Alcon Labs.*, 08 CIV. 3669 (DLC), 2009 WL 435299, at \*3–4 (S.D.N.Y. Feb. 23, 2009); *305 E. 24th Owners Corp. v. Parman Co.*, 714 F. Supp. 1296, 1304 (S.D.N.Y. 1989); *Subsolutions, Inc. v. Doctor's Assocs.*, 436 F. Supp. 2d 348, 352–53 (D. Conn. 2006).

[4]   *See also* cases cited in *supra* note 3 decided post-*Jefferson Parish*.

*Antitrust Litigation* and the other three cases it cites—two of which are from the same litigation as *In re Wireless*—is dicta.[5]  Further, the dicta in Cablevision's four cases all rely on dicta in the footnote of a single case, *In re Visa Check/MasterMoney Antitrust Litigation*.[6]  However, following the Second Circuit's decision in that case, the district court *rejected* the plaintiffs' argument that the Second Circuit does not require proof of foreclosure for *per se* claims: Judge Gleeson denied their summary judgment motion and ordered a trial on an issue "that lie[s] at the heart" of the plaintiffs' claims—whether the alleged tying "harmed competition in the [tied product] market."  *In re Visa Check/Mastermoney Antitrust Litig.*, 96-CV-5238 (JG), 2003 WL 1712568, at \*5–6 (E.D.N.Y. Apr. 1, 2003).[7]

    *Third*, contrary to Cablevision's suggestion, "zero foreclosure" is not a *sui generis* category existing outside the five-prong *per se* tying test.  Plaintiffs who do not plead any foreclosure fail to state a tying claim *precisely because* they have not met the anticompetitive effects prong.  Indeed, in *Moccio*, a *per se* "zero foreclosure" case, Cablevision itself recited the *five* required tying elements and argued that the plaintiffs had failed to state a claim *because* "no injury to competition can result from the alleged tying arrangement."[8]  *See* Zelig Decl. Ex. B

---

[5]  *See, e.g.*, *In re Wireless*, 385 F. Supp. 2d 403, 407 (S.D.N.Y. 2005) (rule of reason case that arose after the *per se* claim had previously been dismissed).

[6]  *See* cases cited in Pls.' Mem. 10 (relying on *In re Visa*, 280 F.3d 124 (2d Cir. 2001), *overruled on other grounds by In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 40 (2d Cir. 2006)).

[7]  *See also* IX Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 1728b at 375 (3d ed. 2011) ("[C]ourts . . . find[] the per se test unsatisfied . . . because insufficient relevant foreclosure had occurred in the tied market.").

[8]  Other "zero foreclosure" cases are in accord.  *See, e.g.*, *Coniglio*, 495 F.2d at 1291 ("Coniglio failed, as a matter of law, to demonstrate an anticompetitive effect in the tied [product] market."); *see also Cancall*, 2001 WL 293981, at \*4 ("[T]he Court finds that Cancall cannot satisfy the fourth element of its tying claims [anticompetitive effects].");  *Friedman*, 624 F. Supp. at 1197 (same).

(*Moccio* Motion To Dismiss) at 13–16.

*Fourth*, although Cablevision tries to conflate them, the required elements of (1) foreclosure of the tied product market, and (2) total volume of interstate commerce affected, are each separate and distinct elements of the *five*-part tying test.  *See, e.g.*, *Cancall*, 2001 WL 293981, at *4.[9]  The volume of interstate commerce element is akin to a jurisdictional test;[10] it does not measure whether competitors in the tied market are foreclosed.[11]

*Fifth*, Viacom noted in its opening brief that Cablevision's claim was properly subject to the rule of reason and not *per se* analysis, but that it was not necessary for the Court to decide the issue on this motion.[12]  However, given that Cablevision now argues that the anticompetitive effect of the alleged tie is not a required element of a *per se* claim, then the Court should hold that Cablevision's claim must be pleaded (and dismissed) under the rule of reason.[13]  After all, in *Brantley*, all defendants (including Cablevision) represented to the Supreme Court that a challenge to the alleged practice of programmers (like Viacom) forcing distributors (like

[9]   *See also* cases cited in *supra* note 3.  Again, Cablevision knows this because it argued that the *Moccio* plaintiffs had failed to satisfy the foreclosure element but raised no objection to their pleadings on the interstate commerce element.  *See* Zelig Decl. Ex B at 13–16.

[10]  *See Parman*, 714 F. Supp. at 1303–04, 1308 (using same analysis for antitrust jurisdiction requirement and total volume of interstate commerce tying element).

[11]  Accordingly, allegations about the total volume of interstate commerce affected do not satisfy the requirement of pleading foreclosure, and cases with such infirm pleading have been dismissed.  *See, e.g.*, *Coniglio*, 495 F.2d at 1290–92; *Parman*, 714 F. Supp. at 1307–08. *Gonzalez* is not to the contrary.  There, the court cited anticompetitive effects and a not insubstantial amount of interstate commerce in the tied market as *independent* requirements of a tying claim.  *See* 880 F.2d at 1516–17.

[12]  *See* Viacom's Mem. 10 n.6.  Under the rule of reason, unlike under the *per se* standard, it is also necessary that the anticompetitive effects of the alleged tie outweigh any procompetitive benefits, *E&L*, 472 F.3d at 29, but this was not an argument raised in support of the motion to dismiss.

[13]  Cablevision does not dispute that anticompetitive effects through foreclosure of programmers are required under the rule of reason.

Cablevision) to buy all the programming of a particular programmer as a condition of purchasing

that programmer's allegedly "must-have" channels[14] was properly analyzed under the rule of

reason because it was not conduct that is always pernicious (like price fixing) with no

conceivable legitimate purpose.[15]  The *Brantley* defendants (including Cablevision) wrote:

> [R]ule of reason antitrust analysis . . . is the accepted method for evaluating all
> agreements between firms operating at different levels of a given product market
> (referred to as "vertical agreements").

Tringali Decl. Ex. A (Br. Opp'n) at 1–2 (quotation marks omitted).[16]  As Cablevision and the

other defendants explained in the Ninth Circuit:

> [T]he Supreme Court and this Court have recognized that absent foreclosure,
> bundling is an entirely legitimate way for manufacturers to market their products,
> even in situations where it could lead to higher prices. . . . Were it not, bakers
> could not sell hot dog buns in packages of eight—because some consumers might
> prefer fewer.  Nor could publishers sell newspapers to consumers complete with
> each of the paper's separate sections (e.g., Sports, Calendar, Business, Food,
> etc.)—because some consumers might not want some sections of the paper.

Zelig Decl. Ex. A (Programmer Answer Br.) at 5.  And the Ninth Circuit expressly noted that

"[t]he parties have disclaimed any contention that the tying practices in this case are *per se*

---

[14]  *See* Zelig Decl. Ex. C (Third Am. Compl.) ¶ 43 (alleging programmers require distributors to
purchase the programmers' full line of cable channels as a condition of purchasing their
leading channels).

[15]  "[T]here are certain agreements or practices which because of their pernicious effect on
competition and lack of any redeeming virtue are conclusively presumed to be unreasonable
and therefore illegal without elaborate inquiry as to the precise harm they have caused or the
business excuse for their use."  *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958).

[16]  Similarly, in briefing to the Ninth Circuit, all defendants (including Cablevision) argued that
the rule of reason was "the accepted standard" for evaluating the tying claim:

> Certain types of restraints, such as horizontal price-fixing arrangements, are
> presumed to . . . [be] *per se* unlawful without subjecting them to the more
> rigorous analysis required by the Rule of Reason.  Plaintiffs acknowledge,
> however, that the vertical restraints they challenge are not *per se* unlawful, and
> the Court should assess them under the Rule of Reason.

Zelig Decl. Ex. A (Programmer Answer Br.) at 21, 22 n.7 (citations omitted).

antitrust violations," *Brantley v. NBC Universal*, 675 F.3d 1192, 1197 n.7 (9th Cir. 2012), and that the alleged tying "may be a response to a competitive market rather than an attempt to circumvent it."[17] *Id.* at 1199.  As a result, the  conduct at issue here is properly evaluated under the rule of reason, not *per se*, standard because it is *not* conduct that can have no justification. *See E&L*, 472 F.3d at 29.  In all events, both standards require allegations of foreclosure.

## II.   CABLEVISION DOES NOT PLEAD FORECLOSURE OF COMPETITION

Cablevision tries to avoid the foreclosure pleading requirement because it has *not* alleged foreclosure and, in fact, told the Ninth Circuit that this very conduct does not cause foreclosure. It does not allege that a single programmer has been unable to enter, or to otherwise compete in, the programming market.  Instead, it tries to recast its own Complaint to escape the unavoidable conclusion that its failure to allege that competitors are foreclosed from competing is fatal to its tying claim.  *See* Viacom Mem. 13–16.

*First*, Cablevision's argument that consumers are somehow "bound" by the alleged tie misses the mark.  It has not alleged that a single consumer is unable to purchase a single network because of the alleged tying.  That a consumer may be unable to purchase a network from *Cablevision* is irrelevant; as Cablevision admits, there are numerous ways programmers distribute their channels.[18]  *See* Viacom Mem. 16–18.  Moreover, Cablevision's allegations that

---

[17]  The Ninth Circuit quoted the Supreme Court's observation that "'[b]uyers often find package sales attractive; a seller's decision to offer such packages can merely be an attempt to compete effectively—conduct that is entirely consistent with the Sherman Act.'"  *Id.* at 1199–1200 (quoting *Jefferson Parrish*, 466 U.S. at 12).

[18]  Cablevision incorrectly attempts to distinguish these circumstances through a footnote in *Roy B. Taylor Sales Inc. v. Hollymatic Corp.*  There, the court suggested a dealer-only tie could result in foreclosure "[w]here the *only* competition for an item occurs at the level of the distributor."  28 F.3d 1379, 1383 n. 23 (5th Cir. 1994) (citations omitted).  Cablevision has made no such allegations concerning the competitive market for programming.  Moreover, unlike a tin can or a television station, the examples in *Taylor*, which are inherently indivisible at the consumer level, Cablevision chooses how or whether to package individual

subscribers are required to purchase certain Viacom networks as part of particular tiers of programming are also insufficient.  The *Brantley* court held (and Cablevision argued) that "allegations of reduced choice" based on the fact that consumers "did not want all of the channels they were required to buy" are insufficient to plead foreclosure.  *Brantley*, 675 F.3d at 1202–03; Zelig Decl. Ex. A (Programmer Answer Br.) at 53–55.

*Second*, Cablevision incorrectly claims that its allegations regarding services it *might* otherwise distribute are sufficient.  Courts in this Circuit require actual, as opposed to speculative, allegations of foreclosure.[19]  Cablevision does not dispute that it has failed to allege which services it *would* actually carry absent the alleged tie or whether other distributors *would* carry *any* additional non-Viacom services absent the alleged tie.  *See* Viacom Mem. 19–22.  Recognizing this deficiency, Cablevision argues that absent the tie it "*would* replace *all* Suite Networks" with other services.  But this purely argumentative statement is un-cited and

---

services for consumers.  *See* Am. Compl. ¶ 28; *see also* CABLEVISION, *Agreement for Optimum TV*, https://www.optimum.net/pages/Terms/TV.html (last visited Nov. 1, 2013) (discussing services offered *a la carte*).  Cablevision's suggestion that Viacom is trying to "mint" an exception to the *per se* rule is also inaccurate.  *Per se* cases require foreclosure, and cases where only distributors are subject to ties require foreclosure, whether plead as rule of reason or *per se*.  *See Smith Mach. Co. v. Hesston Corp.*, 878 F.2d 1290, 1295–98 (10th Cir. 1989).

[19] Cablevision's cited cases are inapposite.  One citation concerns the substantial effect on interstate commerce element of a tying claim, not foreclosure, and even as to that element the court found an *actual*, rather than an estimated, effect was required.  *See Gonzalez*, 880 F.2d at 1517–19.  Two citations have nothing to do with tying or foreclosure.  *See United States v. Microsoft Corp.*, 253 F.3d 34, 78–79 (D.C. Cir. 2001) (discussing causation in a marketing maintenance claim); *MCA Television v. Pub. Interest Corp.*, 171 F.3d 1265, 1280 (11th Cir. 1999) (discussing antitrust injury).  Notably, both cases discuss tying foreclosure in other sections and give no indication that actual foreclosure is not required.  *See* 253 F.3d at 95–97; 171 F.3d at 1277.  The court in the fourth case (requiring foreclosure in a *per se* claim) found foreclosure allegations sufficient when the defendant, among other things, allegedly entered into anticompetitive agreements with competing suppliers in the tied product market.  *See Discovision Assocs. v. Disc Mfg.*, Civ. A. 95-21, 95-345-SLR, 1997 WL 309499, at *4, 9 (D. Del. Apr. 3, 1997).

unsupported by the Complaint, and therefore must be ignored.  Moreover, an allegation that any given distributor cannot carry certain of the services it might prefer does not establish that independent programmers are unable to sell their programming or that consumers are unable to buy it.  *See* Viacom Mem. 15–16.

And *third*, Cablevision may not minimize its own prior judicial admissions (and those of every other major cable distributor)[20] that there is no foreclosure by arguing changed circumstances.  Nothing in the Complaint regarding the alleged declining popularity of the Suite Networks or Cablevision's allegedly tight budget refutes its prior admissions that there is not foreclosure.[21]  Indeed, just last year, the Ninth Circuit in *Brantley* noted Cablevision's assertion that "there was no evidence to support [plaintiffs'] claim that the packaging of channels foreclosed competition in the upstream market."  *Brantley*, 675 F.3d at 1196 n.5.[22]  And Cablevision recently told the FCC, "[t]here has been a dramatic increase both in the number of cable networks and in the programming available to subscribers . . . . There is overwhelming evidence concerning the dynamic nature of the communications marketplace, and the entry of new competitors at both the programming and distribution levels."[23]

---

[20]   The *Brantley* defendants included all major distributors.  675 F.3d at 1195 n.2.

[21]   *See* Viacom Mem. 4–5, 16–18.  In fact, Cablevision's allegation of increased "competition for video services" says the opposite.  *See* Am. Compl. ¶ 137.

[22]   *See also* Zelig Decl. Ex. A (Programmer Answer Br.) at 7 ("Plaintiffs presumably realized it would be impossible to prove foreclosure given the prevalence of independent network carriage and the ever-increasing number of cable channels, [and] they abandoned the effort.").  Moreover, considering Cablevision's admission that there was no foreclosure in *Brantley*, where at least five programmers were alleged to have engaged in tying, its allegation as to foreclosure here, where only one programmer is alleged to be tying, is all the more implausible.  *See* Viacom Mem. 22–23.

[23]   *See* Zelig Decl. Ex. D (Answer To Program Access Complaint, *In re* AT&T Servs., Inc. v. Madison Square Garden L.P. and Cablevision Sys. Corp. v. FCC, 26 FCC Rcd. 157871 (2011) (CSR-8196-P), Ex. 1) at 13 (quotations marks and citation omitted).

## III.    CABLEVISION DOES NOT PLEAD PLAUSIBLE MARKETS

Courts routinely dismiss complaints, like this one, that rely on implausible market definitions based upon single-brands or unsupported by factual allegations.  This failure is an independent basis for dismissal here.[24]  Cablevision has apparently jettisoned its second alternative market definition (*i.e.*, the Core Networks together) and close-to-jettisoned its first, in the hope of saving its third.  For this reason, we address Cablevision's first proposed definition only briefly.  Cablevision points to three allegations that supposedly substantiate its assertion that each "commercially critical" network is its own market and has no competitors: (1) the top distributors have carried the Tying Networks for years; (2) the Tying Networks are "commercially critical"; and (3) Cablevision has not alleged that every network is its own market.  None of these allegations provides any basis to support Cablevision's implausible claim that "commercially critical" networks, like ABC, NBC, CBS, FOX, ESPN, MTV, and BET, are each markets unto themselves and do not compete against each other and against other networks in a broader market.[25]  *See* Viacom Mem. 24–28.  Cablevision's silence in response to Viacom's

---

[24]   *See, e.g.*, *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 237–39 (2d Cir. 2008); *United Magazine*, 146 F. Supp. 2d at 398–99; *Mathias v. Daily News*, 152 F. Supp. 2d 465, 481–83 (S.D.N.Y. 2001); *Carell v. Shubert Org.*, 104 F. Supp. 2d 236, 264–66 (S.D.N.Y. 2000); *Global Disc. Travel Servs. v. Trans World Airlines*, 960 F. Supp. 701, 705–06 (S.D.N.Y. 1997); *E&G Gabriel v. Gabriel Bros. Inc.*, 93 CIV. 0894 (PKL), 1994 WL 369147, at *3 (S.D.N.Y. July 13, 1994); *Re-Alco Indus. v. Nat'l Ctr. for Health Educ.*, 812 F. Supp. 387, 391–92 (S.D.N.Y. 1993); *Theatre Party Assocs. v. Shubert Org.*, 695 F. Supp. 150, 154–56 (S.D.N.Y. 1988); *Shaw v. Rolex Watch, U.S.A.*, 673 F. Supp. 674, 678–79 (S.D.N.Y. 1987).

[25]   Cablevision's citations only underscore the implausibility of its alleged markets.  In one case, the single-market definition was *rejected* as unexplained and implausible.  *See Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 373 (S.D.N.Y. 2012).  In another, the court departed from the general rule that "a single brand does not define a product market" because the brand at issue was the only FDA-approved treatment for a certain disorder.  *Alternative Electrodes, LLC v. Empi Inc.*, 597 F. Supp. 2d 322, 335 (E.D.N.Y. 2009).  The two other cases are easily distinguishable.  Each challenged the defendants' failure to authenticate a Rothko (*Vitale v. Marlborough Gallery*, 93 CIV. (PKL) 6276, 1994 WL 654494, at *4 (S.D.N.Y. July 5, 1994)) or a Warhol (*Simon-Whelan v. Andy*

argument in that regard is telling and should be dispositive here.

Cablevision also fails to provide factual allegations to support its alternative market

definition: the so-called Popular Children's Programming, Popular Comedy Programming,

Popular African American Programming, and Popular Young Adult Programming markets.[26]

*First*, Cablevision claims that by analyzing the so-called markets from the perspective of

television consumers, Viacom is using the wrong perspective.  But it is Cablevision that alleges

that Viacom has market power based on its share of *consumer* ratings in the alleged markets.  *See*

Am. Compl. ¶¶ 72, 80, 88, 97.[27]  Cablevision cannot have it both ways: Because Cablevision

defines market power by reference to consumers, it must allege plausible markets that take into

account  "all interchangeable substitute products" from the perspective of consumers.  *See*

*Chapman*, 546 F.3d at 238 (quotation marks omitted).[28]  It has not done so.  *See* Viacom Mem.

---

*Warhol Found. for the Visual Arts*, 07 CIV. 6423(LTS), 2009 WL 1457177, at *6 (S.D.N.Y. May 26, 2009)) painting so that it could be sold as authentic and not a forgery.  If one sought to sell a Rothko or Warhol, the seller had no other option by which to obtain authentication. There were no authentication substitutes.  Here, Cablevision has repeatedly told the courts, the FCC and the SEC that the programming market is highly competitive with countless substitutes, highlighting the implausibility of Cablevision's alleged markets.

[26]  Cablevision's digression into the "hypothetical monopolist test" is a distraction.  *United States v. Visa*, just like the cases cited in Viacom's opening brief, requires a market to encompass reasonable substitute products.  163 F. Supp. 2d 322, 335 (S.D.N.Y. 2001).

[27]  Cablevision's claim that top distributors carry the Viacom services is not an allegation of market power.  Cablevision alleges that top distributors also carry other services in the alleged markets, *see* Am. Compl. ¶ 65, 75, 82, 90, and Cablevision alleges no facts suggesting Viacom's services have any more market power or market share than any of those other services.  Cablevision's only allegations of market power are from the *consumer* perspective.

[28]  The cases cited by Cablevision in which courts analyze markets from the perspective of a distributor are not to the contrary.  *See Telecor Commc'ns v. Sw. Bell Tel. Co.*, 305 F.3d 1124, 1132 (10th Cir. 2002) ("[R]egardless of the interchangeability of pay phones and cell phones at the end-user level, there is no doubt that pay phones and cell phones are not interchangeable at the location-owner level, and that is the level where the Plaintiffs argued that [defendant] has monopolized competition."); *Nobody in Particular Presents, Inc. v.*

28–32.  As importantly, Cablevision has previously argued to the FCC that a programming service does not have market power unless a sufficient number of *consumers* would switch if the cable operator did not offer that service.[29]  Notably, Cablevision makes *no* allegation here to meet its own proposed standard for market definition.

Contrary to Cablevision's suggestion, the problem with Cablevision's claimed markets is not that they take consumer preferences into account; it is that they do *not* take such preferences into account.  In other words, it is precisely because a "relevant product market is composed of products that have reasonable interchangeability in the eyes of consumers," that Cablevision's claimed markets fail.  *See Visa U.S.A.*, 163 F. Supp. at 335 (quotation marks omitted).  Cablevision has tried to define its markets around the contours of Viacom's networks rather than around how those networks are viewed by ultimate consumers vis-à-vis other programming services.  This "product out" approach is flatly rejected.[30]  *See* Viacom Mem. 30–32.

*Second*, Cablevision's claim that its four proposed markets are somehow justified because the top distributors have continued to carry Viacom's services despite rising prices and declining ratings is unexplained and unsupported.  Why does carriage by top distributors of Nickelodeon mean Nickelodeon is in a market composed only of itself, the Disney Channel and

---

*Clear Channel Commc'ns*, 311 F. Supp. 2d 1048, 1092 (D. Colo. 2004) (finding market power based on statistics indicating that defendant "controls four of the six rock radio stations" in the relevant geographic market).

[29]   *See* Tringali Decl. Ex. F (Pet'rs Br. *Cablevision Systems Corp. v. FCC*, 597 F.3d 1306 (D.C. Cir. 2010) (Nos. 07-1425, 07-1487)) at 47 (citations omitted).

[30]   *See Bayer Schera Pharma AG v. Sandoz, Inc*., 08 Civ.03710(PGG), 08112(PGG), 2010 WL 1222012, at *6 n.10 (S.D.N.Y. Mar. 29, 2010) (citing *Belfiore v. N.Y. Times*, 654 F. Supp. 842, 846 (D. Conn. 1986)).

the Cartoon Network, but not other channels watched by children and families?[31]  Moreover,

Cablevision's allegations regarding prices and ratings for Viacom's services are meaningless

without other allegations as to market conditions.  Cablevision ignores that the rate increases and

ratings declines for Viacom's services could have been comparable to the rate increases and

ratings declines of other programmers' services or, alternatively, that Viacom's prior rates could

have been below-market.

## IV.    CABLEVISION'S REQUEST FOR SPECIAL EQUITABLE RELIEF SHOULD BE STRICKEN

In addition to money damages, Cablevision asks the Court to do three things: (1) void the

2012 Agreement; (2) enjoin Viacom from conditioning carriage of its Core Networks on

Cablevision's licensing of Viacom's Suite Networks; and, most brazenly, (3) require Viacom to

license only the Core Networks to Cablevision at the negotiated Core-plus-Suite prices for an

unspecified amount of time.  Am Compl. ¶ 198.  Yet Cablevision still fails to justify its third

request.  It should be stricken.

Cablevision cannot—and does not—contest that the rates and terms for the Core

Networks are intertwined and interdependent with the rates and terms for the Suite Networks.

*See* Viacom Mem. 36–37.  Accordingly, the 2012 Agreement cannot be split between Core

Network rates on the one hand and Suite Network rates on the other, as Cablevision implicitly

concedes.

---

[31]   The only case Cablevision cites addressing market pleadings underscores the implausibility of Cablevision's.  In *Trans Sport, Inc. v. Starter Sportswear, Inc.*, 88-CV-1292, 1989 WL 29454, at *3 (N.D.N.Y. Mar. 21, 1989), the court found a market composed of authentic official jackets for NHL, NFL, NBA, and MLB teams was sufficiently alleged not to include other jackets because of allegations that the team jackets "have distinct customers—the fans themselves; and they have distinct prices which apparently are not subject to meaningful downward change."  Cablevision has not alleged that the customers and prices of services in its so-called markets are different from services it has excluded.  *See* Viacom Mem. 28–31.

Nonetheless, Cablevision asks the Court to impose a "short term mandatory injunction" that would do just that, namely, "compel[] Viacom to license the Core Networks to Cablevision on existing terms" while discarding the Suite Network terms.[32]  Pls.' Mem. 34.  If a mandatory injunction were imposed, then the 2012 Agreement would effectively be severed and Viacom would be forced to accept terms it did not negotiate.  However, courts do not permit parties to carve up functionally indivisible contracts and pick-and-choose the parts they like and avoid the parts they do not.  *See* Viacom Mem. 35–39; *see also* Restatement (Second) Of Contracts § 240 (1981).[33]

Cablevision attempts to argue that such an injunction would be necessary because without it, Viacom could try to charge high rates for only the Core Networks.  Pls.' Mem. 35.  Significantly, Cablevision forgets that the supposed anticompetitive harm is foreclosure of competing programmers, not the price *it* would pay for fewer services that would *not* foreclose

---

[32]  Cablevision tries to argue that severability is not an issue because it wants the entire contract voided.  Pls.' Mem. 35–36.  But this red herring cannot obscure the fact that it wants the Court to preserve only the terms from the 2012 Agreement that it finds favorable.

[33]  Moreover, the cases Cablevision cites in support of its legally unavailable remedy, all of which involve patents, are inapposite.  For instance, unlike here, the antitrust violations at issue in *United States v. Glaxo Group*, 410 U.S. 52, 62 (1973), were "intimately associated with and contributed to" various patents of a chemical compound.  Moreover, the extraordinary injunctive relief granted in *Glaxo* arose in part because "bulk griseofulvin has not been available to any but appellees' three licensees and that these three are the only sources of dosage-form griseofulvin in the United States."  *Id.* at 62.  In contrast, the Core Networks are carried by all of top 15 U.S. distributors, which account for "nearly 95% of subscribers" nationwide.  Am. Compl. ¶¶ 42, 44, 46, 48.  Similarly, in *International Salt Co. v. United States*, 332 U.S. 392, 401 (1947), Justice Jackson clearly stated that the purpose of equitable relief like the kind Cablevision seeks must be to "pry open to competition a market that has been closed by defendants' illegal restraints."  It is decidedly not to give billion-dollar companies like Cablevision a discounted bargain on the distribution of Viacom's networks.  *H.L. Moore Drug Exchange v. Eli Lilly & Co.*, 76 Civ. 2817 (RWS), 1980 WL 1959 (S.D.N.Y. Nov. 21, 1980), is similarly unhelpful.  Unlike in *H.L. Moore*, Viacom has no "longstanding desire to end direct dealings with" Cablevision and does not "prefer[]" other distributors to Cablevision, *id.* at *2; to the contrary, Viacom would like to continue its agreement with Cablevision, just not on the unilateral terms Cablevision proposes here.

rival programmers.  Moreover, Viacom is not required to license Cablevision certain channels at certain prices.  If Cablevision does not like the rates Viacom offers, Cablevision concedes it can simply choose not to carry channels such as MTV.  *See* Pls.' Mem. 35.[34]  Rather than negotiate with Viacom, Cablevision wants the Court to dictate the "baseline" for negotiations, namely by handcuffing Viacom to the artificially low Core-only rates—rates which were set only in conjunction with the Suite Service rates.

Cablevision's request for equitable relief is also barred by the doctrine of laches.  *See* Viacom Mem. 38–39.  Contrary to its assertion, courts have dismissed antitrust claims like Cablevision's on laches grounds.  *E.g.*, *Madison Square Garden, L.P. v. National Hockey League*, 07 CV 8455(LAP), 2008 WL 4547518 (S.D.N.Y. Oct. 10, 2008).

Because Cablevision's requested relief is prejudicial and unavailable as a matter of law, this Court should strike it.[35]

## CONCLUSION

Cablevision's Amended Complaint fails to state a claim for relief and should be dismissed with prejudice.

Dated: November 8, 2013

Respectfully submitted,

SIMPSON THACHER & BARTLETT LLP

By:__/s/ Joseph F. Tringali___
        Joseph F. Tringali

---

[34] Cablevision's attempt to characterize this as a "Hobson's choice" is legally irrelevant.  As Cablevision alleged, it has stopped distributing a popular channel such as Fox over price disputes.  Am. Compl. ¶ 31.

[35] Cablevision's Donnelly Act and block-booking claims should be dismissed for the reasons stated in Viacom's opening brief.  *See* Viacom Mem. 32–35.

Peri L. Zelig
425 Lexington Avenue
New York, NY 10017
Telephone:   (212) 455-2000
Facsimile:    (212) 455-2502

*Attorneys for Defendants Viacom International Inc.
and Black Entertainment Television LLC*

Kenneth R. Logan,
*Of Counsel*

16