UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CABLEVISION SYSTEMS
CORPORATION et al.,

       Plaintiffs,                             No. 13 Civ. 1278 (LTS) (JLC)

       -against-

VIACOM INTERNATIONAL INC. et al.,
       Defendants.
-------------------------------------------------------x

## MEMORANDUM ORDER

       Plaintiffs Cablevision Systems Corporation and CSC Holdings, LLC (collectively, "Cablevision"), bring this antitrust action against Defendants Viacom International Inc. and Black Entertainment Television LLC (collectively, "Viacom") pursuant to 15 U.S.C. § 1 and New York General Business Law § 340.  Asserting that provisions of its licensing agreement with Viacom, which requires Cablevision to contract for certain programming networks in addition to the programming networks that Cablevision considers most desirable, constitute illegal tying and block booking arrangements under the federal antitrust laws and also violate New York state law, Cablevision seeks damages and injunctive relief pursuant to 15 U.S.C. §§ 15(a) and 26, and declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.  The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1337.

       Viacom moves to dismiss each of the claims asserted in Plaintiffs' amended complaint.  In the alternative, Viacom moves to strike Cablevision's request for equitable relief.  The Court has reviewed and considered carefully all of the parties' submissions and arguments.  For the following reasons, the motion is denied in its entirety.

BACKGROUND

The following brief factual summary is drawn from Cablevision's amended complaint (the "Complaint").  Cablevision entered into a licensing agreement with Viacom in 2012.  In the negotiations, Viacom required Cablevision to license a dozen less popular programing networks (termed "Suite Networks" in the Complaint) in order to gain license rights to what Cablevision alleges are "four commercially critical" programming networks, which Cablevision terms "Core Networks."  Cablevision alleges that Viacom threatened it with a substantial financial "penalty" for declining to purchase the licenses for, and distribute, the Suite Networks along with the Core Networks.  Cablevision further alleges that the channels on which it is able to offer programming are limited and that, were it to be able to forego the Suite Networks, it would seek out programming from other suppliers.

DISCUSSION

In deciding a motion to dismiss a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiffs' favor.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of elements of a cause of action will not do."  Iqbal, 556 U.S. at 677 (internal citations omitted).  Rather, to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007).  The Court addresses each of Cablevision's claims, and Viacom's principal arguments, in turn.

Per Se Tying Claim Under 15 U.S.C. § 1

Cablevision alleges that its agreement with Viacom constitutes a per se illegal tying arrangement in violation of 15 U.S.C. § 1.  See Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 9 (1984) ("[C]ertain tying arrangements pose an unacceptable risk of stifling competition and therefore are unreasonable 'per se'").  The harm that the per se illegal tying doctrine is intended to address is the "substantial potential for impact on competition" that occurs when a seller's dominant position in a tying product market is used as leverage to force the sale of tied products.  Id. at 14–15.  Cablevision asserts that Viacom uses the Core Networks as a tying product to force the licensing of Suite Networks.

The parties generally agree that, to determine whether a particular tying arrangement is illegal per se, a court must examine whether there exists: (1) a tying and tied product; (2) evidence of actual coercion by the seller that forced the buyer to accept the tied product; (3) sufficient economic power in the tying product market to coerce purchaser acceptance of the tied product; and (4) the involvement of a "not insubstantial" amount of interstate commerce in the tied market.  See In re Visa Check/Master Money Antitrust Litig., 280 F.3d 124, 13 n.5 (2d Cir. 2001); In re Wireless Telephone Services Antitrust Litig., 385 F. Supp. 2d 403, 414 (S.D.N.Y. 2005).  Viacom's first attack on Cablevison's per se tying claim is premised on the assertion that a fifth factor – anticompetitive effects – must be pleaded and proven.  The per se tying doctrine and the cases applying it do not, however, support Viacom's position.  As Judge Cote has cogently explained:

> [a]nalysis under the per se rule is, by definition, without inquiry into actual market conditions.  Put another way, where a tying arrangement may be condemned as illegal per se, plaintiffs need not allege, let alone prove, facts addressed to the [anticompetitive effects] element.  If a plaintiff succeeds in establishing the existence of sufficient market power to create a per se violation,

>	the plaintiff is also relieved of the burden of rebutting any justifications the defendant may offer for the tie.

In Re Wireless Telephone Services Antitrust Litig., 385 F. Supp. 2d at 414 (internal citations and quotations omitted).

Cablevision has, in any event, pleaded facts sufficient to support plausibly an inference of anticompetitive effects.  For example, Cablevision alleges that if it were not forced to carry the Suite Networks, it "would carry other networks on the numerous channel slots that Viacom's Suite Networks currently occupy."  (Compl. ¶ 10.)  Cablevision also alleges that Cablevision would buy other "general programming networks" from Viacom's competitors absent the tying arrangement.  (Id.)  Viacom's motion is therefore denied to the extent it seeks dismissal of Cablevision's per se tying claim for failure to allege anticompetitive effects.

Viacom also argues that the tying claim is insufficient because Cablevision has failed to identify distinct tying and tied product markets.  "To survive a 12(b)(6) motion to dismiss, an alleged product market must bear a rational relation to the methodology courts prescribe to define a market for antitrust purposes—analysis of the interchangeability of use or the cross-elasticity of demand, and it must be plausible."  Todd v. Exxon Corp., 275 F.3d 191, 200 (2d Cir. 2001) (internal citations and quotations omitted).

Here, Cablevision has offered three alternative definitions of the relevant tying product market.  First, it asserts that each of the so-called Core Networks – Nickelodeon, Comedy Central, BET, and MTV – may be considered a standalone tying product market based on consumer demand for its particular programming.  (Compl. ¶¶ 40–59.)  Second, Cablevision posits that the "Core Networks," comprised of the Nickelodeon, Comedy Central, BET, and MTV networks, as a group, constitute a relevant tying product market based on the combined

market power of the Core Networks.  (Compl. ¶¶ 60–62.)  Third, Cablevision offers programming type classifications and posits that the relevant tying markets can be distinguished on the basis of the programming type and the popularity of a particular Core Network within that programming type – for example, "Popular Comedy Programming" or "Popular Children's Programming."  (Compl. ¶¶ 62–98.)  Cablevision alleges that each of the Core Networks is so dominant in its class as to give Viacom market power within the particular class.  (Id.)

As for the tied product, Cablevision denominates the group of all other networks it is required to carry under the licensing agreement as "Suite Networks."  These "Suite Networks" are, Cablevision alleges, part of a "general programming market" consisting of all "non-local programming that does not fall into a commercially critical category" (i.e., all such programming other than the defined "Tying Networks").  (Compl. ¶ 118; see generally Compl. ¶¶ 102–25.)  Cablevision has proffered subscription, demographic and other statistical information, as well as factual allegations regarding cross-elasticity of demand and barriers to entry, that suffice at this pleading stage to make plausible its market definition allegations.  Accordingly, Viacom's motion is denied insofar as it is premised on insufficiency of market definition allegations.

Donnelly Act Claim

A state antitrust cause of action under the Donnelly Act, N.Y. Gen. Bus. Law § 340, is evaluated by the same criteria applied in analyzing a claim of illegal tying under 15 U.S.C. § 1.  See Yankees Enter. and Sports Network, LLC v. Cablevision Sys. Corp., 224 F. Supp. 2d 657, 677–78 (S.D.N.Y. 2008).  The Court therefore declines to dismiss Cablevision's Donnelly Act claim for the reasons set forth in the preceding section of this Memorandum Order.

Block-booking Claim Under 15 U.S.C. § 1

Cablevision alleges that its agreement with Viacom constitutes an illegal block-booking arrangement in violation of 15 U.S.C. § 1.  (Compl. ¶¶ 186–90.)  In a 1948 opinion outlawing movie production companies' practice of conditioning the sale and exhibition of popular movies on the exhibition of less desirable movies, the Supreme Court defined block-booking as "the practice of licensing, or offering for license, one feature or group of features on condition that the exhibitor will also license another feature or group of features released by the distributors during a given period." United States v. Paramount Pictures, 334 U.S. 131, 156–58 (1948).  The Supreme Court reasoned that, "[w]here a high quality film greatly desired is licensed only if an inferior one is taken, the latter borrows quality from the former and strengthens its monopoly by drawing on the other.  The practice tends to equalize rather than differentiate the reward for the individual copyrights." Id. at 158.  Viacom asserts that the block-booking doctrine has been abrogated and seeks dismissal of Cablevision's claim on that basis.  Viacom's cited authority does not, however, support its abrogation assertion.  Illinois Tool Works Inc. v. Independent Ink, Inc., 547 U.S. 28, 44 (2006), on which Viacom relies, abrogated the presumption or inference of market power based on a patent, not the doctrine of block-booking itself, which was derived from the notion that the use of tying arrangements to extend the monopoly privileges inherent in a patent or copyright is improper.  See Paramount Pictures at 158–59; Illinois Toolworks, 547 U.S. at 38–40.  It appears that block-booking claims are not prohibited but would, rather, properly be subjected to market power analysis under the principles enunciated in Jefferson Parish.  See Illinois Toolworks, 547 U.S. at 42–43.  For this reason, and for the reasons set forth in the Court's discussion of Cablevision's tying claim, Viacom's motion to dismiss the block-booking claim is denied.

Viacom's Motion to Strike

In its prayer for relief, Cablevision requests that, inter alia, the Court void the licensing agreement and issue a mandatory injunction prohibiting Viacom from conditioning the licensing of the Core Networks on licensing of Suite Networks, and compelling Viacom to license its Core Networks and provide ancillary services with respect to those Networks to Cablevision on the existing contract terms.  Viacom attacks this demand as legally unfounded and inequitable.  The Court declines to address the propriety and viability of the demand at this early stage of the litigation.  The motion to strike the demand is therefore denied, without prejudice to the parties' positions.

The Court has considered all of Viacom's other arguments and finds them insufficient to warrant dismissal of the Complaint.

## CONCLUSION

For the foregoing reasons, Viacom's motion to dismiss the amended complaint is denied, without prejudice to the parties' positions concerning the propriety and viability of Cablevision's demand for an order requiring Viacom to license only the Core Networks to Cablevision on the terms specified for those Networks and ancillary services in the current agreement.  This Order resolves docket entry number 27.

SO ORDERED.

Dated: New York, New York
        June 20, 2014

                                                    /s/ Laura Taylor Swain
                                                    LAURA TAYLOR SWAIN
                                                    United States District Judge