UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| CABLEVISION SYSTEMS CORPORATION and CSC HOLDINGS, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | No. 13 Civ. 1278 (LTS) (JLC) |
| -against- | ) ) | **AMENDED INITIAL** |
| VIACOM INTERNATIONAL INC. and BLACK ENTERTAINMENT TELEVISION LLC, | ) ) ) | **CONFERENCE REPORT** |
| Defendants. | ) ) | |

_____

Pursuant to the Initial Conference Order dated March 5, 2013 and consistent with Fed. R. Civ. P. 26(f) and the October 2011 Judicial Improvements Committee Report Concerning the Pilot Project Regarding Case Management Techniques for Complex Civil Cases in the Southern District of New York ("Pilot Project Procedures"), Plaintiffs Cablevision Systems Corporation and CSC Holdings, LLC (collectively, "Cablevision") and Defendants Viacom International Inc. and Black Entertainment Television LLC (collectively, "Viacom") hereby submit this Amended Initial Conference Report in advance of the Initial Conference scheduled for September 5, 2014. This Amended Initial Conference Report supplants the Initial Conference Report the parties submitted to the Court on May 10, 2013, prior to the Court's denial of Viacom's motion to dismiss Cablevision's Amended Complaint on June 20, 2014.

I.      **Background**

      A.      **Nature of the Action**

            1.      **Plaintiffs' Statement**

Cablevision brings this civil antitrust action to redress Viacom's illegal tying and block booking in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and New York law.

Cablevision alleges that Viacom leveraged its substantial market power over certain Core Networks in order to force Cablevision to license and distribute some dozen other Suite Networks, thereby foreclosing Cablevision's carriage of competing general programming networks that Cablevision and its consumers would prefer.  Viacom coerced Cablevision through the substantial market power it derives from its exclusive right to distribute commercially critical Core Networks, namely Nickelodeon, Comedy Central, BET, and MTV.  As set forth in the Amended Complaint, Viacom abused that market power to strong-arm Cablevision into carrying its Suite Networks by threatening to impose a billion-dollar-plus penalty if Cablevision licensed only the Core Networks.  Cablevision would prefer to distribute, and Cablevision's subscribers would prefer to receive, alternative networks to the Suite Networks over the scarce bandwidth Viacom's Suite Networks consume.  Viacom's illegal conduct, however, forecloses Cablevision's distribution of competing general programming networks.  Viacom's illegal tie to Cablevision alone accordingly forecloses tens of millions of dollars of tied product market commerce.

Cablevision further alleges that Viacom's tying scheme is not limited to Cablevision but more broadly forecloses competing programming in, and thereby hinders competition in, the market as a whole:  Viacom, Cablevision believes, has employed the same coercive tactics that forced Cablevision to succumb to Viacom's tying arrangement to compel other distributors to carry Viacom's Suite Networks rather than other networks.  Absent Viacom's tying, other distributors, too, would distribute alternative general programming networks in place of Viacom Suite Networks.  Cablevision, moreover, alleges that absent Viacom's tying arrangement, non-Viacom general programming networks – several of which threaten to take audience away from Viacom's networks – would obtain greater distribution.  If Viacom's Suite Networks had to

compete on the merits against other general programming networks consumers would get more for what they pay for video services.

Cablevision seeks damages, an injunction, and declaratory relief to remedy Viacom's violations of the antitrust laws and to protect competition and consumers from ongoing harm. Defendants' contention that laches or other defenses bar certain equitable relief Cablevision seeks is wrong. Cablevision did not unreasonably delay challenging Viacom's unlawful conduct; Viacom's argument that Cablevision acquiesced to Viacom's unlawful conduct in 2009 is baseless. Cablevision's Amended Complaint alleges, among other things, how the terms Viacom obtained from Cablevision in the 2012 Tying Arrangement differ from those Viacom extracted in 2009; how the popularity of Viacom's Suite Networks declined from 2009 to 2012; and how the competitive and other conditions Cablevision confronts differ from 2009. Maintaining an interim Core-only license on reasonable terms, moreover, would be an appropriate exercise of this Court's equitable powers.

Viacom's counterclaims are baseless. No severability dispute (or reformation dispute) is ripe. Cablevision does not seek to rewrite the 2012 Tying Agreement, but rather to declare it invalid and, as a temporary measure to prevent recurrence of the violation, to impose a distinct short-term Core-only license pending negotiation of a revised agreement free of tying. Viacom's separate counterclaim for fraudulent inducement is a desperate attempt to divert the Court's attention from Viacom's coercive and unlawful conduct. Not surprisingly, the claim is infirm. Among other reasons: It is simply not true that Cablevision had decided to sue Viacom at the time Viacom coerced Cablevision into signing the 2012 Tying Agreement, and no facts Viacom avers support such an inference. Viacom's allegations of reasonable reliance, which invoke Cablevision's participation in the inapposite *Brantley* case, are equally baseless. Additionally,

even if Cablevision had made a decision (which it had not) to challenge Viacom's unlawful tie before entering into the 2012 Tying Agreement, Cablevision had no duty to disclose any such plan.  Finally, the legal rule Viacom proposes would impair enforcement of the Sherman Act. Viacom avers that, had it anticipated Cablevision's suit, it would have refused to license its must-have programming to Cablevision, thereby harming both Cablevision and its subscribers. Viacom would therefore put coerced parties such as Cablevision to a Hobson's choice: either accept Viacom's anticompetitive tie without the ability to test its legality free from countersuit, or suffer the severe economic consequences of losing must-have programming.  Viacom's proposed rule clearly is contrary to the public interest.

## 2.   __Defendants' Statement__

Since the early days of the cable television industry, cable operators have sought to negotiate lower rates for cable television programming services by offering additional distribution to cable programmers, who can then monetize this distribution by selling advertising, selling sponsorships, developing new programming ideas and through other means.  In this way, cable operators reduce their costs, while cable programmers receive value in the form of the additional distribution and other terms.  In recent years, these agreements have grown more complex, as terms such as internet streaming rights, video on demand programming, local advertising concessions, channel locations, marketing obligations, territories, responsibility for compliance with legal obligations, responsibility for music performance rights, digital video recorder rights, the right to insert advertising digitally, and many other business matters must be resolved before an agreement can be concluded.  Programmers like Viacom and distributors like Cablevision engage in protracted negotiations before ultimately reaching equipoise by agreeing upon the terms and conditions of their affiliation agreement and being bound by those

interdependent terms and conditions.  In the same way, each term and condition of the licensing agreement between Viacom and Cablevision dated December 31, 2012 (the "2012 Agreement") was interdependent on the other terms and conditions negotiated and agreed to by the parties.

Cablevision now seeks to rewrite the negotiating history and the 2012 Agreement itself by alleging that Cablevision's agreement to license both the Core and Suite Networks from Viacom was an illegal tying agreement.  Viacom denies Cablevision's allegations.  In its filings with courts, the Federal Communications Commission ("FCC") and the Securities and Exchange Commission ("SEC"), Cablevision has consistently taken contrary positions to what it alleges here are relevant product markets for programming services.  As significantly, in *Brantley v. NBC Universal*, a case in which Cablevision along with other distributors and programmers (including Viacom) was a defendant that challenged the same alleged bundling of cable programming services as Cablevision purports to do here, Cablevision (with the other defendants) argued to the courts that foreclosure of rival programmers was a necessary requirement of a Sherman Act Section 1 tying or bundling claim under *both* the per se and rule of reason standards, that the alleged bundling at issue should be judged under the rule of reason and not per se standard, and that any allegation that rival programmers were foreclosed would not have "any substance."

A required element of a tying claim is that Viacom must have market power in one product market that is substantial enough that it could coerce Cablevision to purchase programming channels in another and separate product market in which Viacom does not have market power.  Indeed, without such a showing, Cablevision would be effectively challenging nothing more than volume or package discounts.  But Viacom does not have such market power as Cablevision's own allegations demonstrate.  For example, Cablevision's allegation that each

of MTV, Comedy Central, BET and Nickelodeon is its own separate product market and that each faces no competitive substitutes has been rejected consistently by the courts when parties have tried to define antitrust markets narrowly and confine a market to a single particular brand. Moreover, as noted above, Cablevision's allegations here are the exact *opposite* of what it has repeatedly argued to the courts, FCC and SEC when it has had to defend its own conduct with regard to programming services it owned.

Moreover, in its Amended Complaint, Cablevision directly contradicts its own prior position and alleges that Viacom's alleged bundling of the so-called Core and Suite Networks in and of itself causes substantial foreclosure of rival programmers, another requirement to make benign discounts into something more.  In an environment in which cable operators routinely carry over 500 channels, of which Viacom is alleged to seek distribution of only a very small number of channels, foreclosure by allegedly coercing carriage of the Viacom Suite Services is not plausible.  First, nascent programmers have not been foreclosed from obtaining carriage. Foreclosure must be shown as to the distribution market as a whole, not just as to one potential cable distributor (*i.e.*, Cablevision).  Second, even as to itself, Cablevision needs to show more than it would have *considered* launching nascent programming channels instead of the Suite Networks.  It must show that it would have actually *launched* such services and without such distribution, rival services were foreclosed from the alleged market for general programming services so much so that Viacom could obtain market power in the alleged general programming market.

Finally, the equitable relief Cablevision seeks is not available to it.  Cablevision wants to keep the favorable rates it negotiated for the Core Networks but be relieved of its obligations for the Suite Networks.  Cablevision negotiated the agreement as a whole and the rates and terms to

which the parties agreed for the Core Networks were part and parcel of the negotiation of the overall agreement, including the rates and terms to which Cablevision agreed for the Suite Networks as well as other interdependent favorable terms that Cablevision obtained from Viacom, and cannot be severed.  Moreover, Cablevision is barred by laches from seeking equitable relief because it alleges that it was aware of this conduct at least as early as 2008 but did not challenge it until now, after it had negotiated and executed the 2012 Agreement and obtained favorable rates for the Core Networks that it would not have been able to obtain had Cablevision not also agreed to distribute the Suite Networks at the rates negotiated for those services.

Viacom has also asserted two counterclaims against Cablevision, one for fraudulent inducement and the other for declaratory relief.  Viacom was fraudulently induced by Cablevision to enter into the 2012 Agreement.  Cablevision represented to Viacom that the 2012 Agreement was valid, lawful and binding and at no time informed Viacom that Cablevision intended to challenge the 2012 Agreement almost immediately after the parties executed it as an unlawful tying agreement.  However, this was Cablevision's intent and scheme so that it could obtain favorable terms and conditions but then seek to void interdependent terms of the 2012 Agreement – i.e., the carriage of the Suite Networks – so that it could obtain favorable rates on the Core Networks as well as other terms and conditions but be relieved of the corresponding consideration it provided Viacom by agreeing to carry the Suite Networks.  Viacom seeks rescission of the 2012 Agreement and actual and punitive damages.

Finally, Viacom seeks a declaratory judgment that the 2012 Agreement is an integrated whole and not subject to being severed or reformed.  If the 2012 Agreement was an unlawful tie – and it was not – then the only available remedy is to void the 2012 Agreement, not to sever its

interdependent terms and conditions so that Cablevision can continue to distribute the Core Network at the favorable rates it negotiated as part of the interdependent and integrated terms and conditions contained in the 2012 Agreement but be relieved of its carriage obligations with regard to the Suite Networks.

### B. Pending Related Actions

There are no pending related criminal or civil actions.

### C. Jurisdiction

The parties agree that the Court has jurisdiction over Cablevision's federal causes of action pursuant to 28 U.S.C. §§ 1331 and 1337(a) and over Cablevision's state law cause of action, and over Viacom's counterclaims, pursuant to 28 U.S.C. § 1367(a).

### D. Transfer to Magistrate Judge

The parties do not consent to the transfer of the case to, or to trial before, a Magistrate Judge.

## II. Initial Pretrial Conference Checklist Topics

Pursuant to Paragraph I(A)(1) of the Pilot Project Procedures, the parties conferred on August 15, 2014, with respect to the topics listed in the Initial Pretrial Conference Checklist. With respect to such topics, the parties inform the Court as follows:

### A. Preservation (Topic 1):

The parties have informed each other that appropriate litigation hold notices have been issued and that each party represents that it has taken steps to preserve relevant evidence, including electronically stored information ("ESI").

### B. Initial Disclosures (Topic 2):

The parties do not anticipate seeking any changes in timing, form, or requirements of mandatory disclosures under Fed. R. Civ. P. 26(a). The

parties shall exchange initial disclosures as soon as practicable, but in any event no later than October 1, 2014.

      **C.**      **Discovery Stay (Topic 3):**  The parties agreed in their Initial Conference Report to stay discovery pending resolution of Viacom's motion to dismiss.  Although Cablevision has not made a decision yet as to whether to move to dismiss Viacom's counterclaims, no party believes any further stay of discovery is warranted.

      **D.**      **Magistrate Judge (Topics 4, 13):**  The parties welcome the involvement of the Magistrate Judge with respect to pretrial matters, including discovery, and encourage communication and coordination between the Magistrate Judge and the District Judge with respect to such matters. The parties do not consent to transfer to, or trial before, a Magistrate Judge.

      **E.**      **Preliminary Issues (Topic 5):**  The parties do not anticipate any preliminary issues that are likely to arise that will require court intervention.

      **F.**      **Discovery Disputes (Topic 6):**  If discovery disputes arise between the parties, the parties will follow the procedures for seeking resolution of such disputes set forth in this Court's Individual Practices and the Pilot Project Procedures.

      **G.**      **Proposed Discovery, Discovery Schedule, and Expert Witnesses (Topics 7, 8):** The parties propose the schedule set forth in Exhibit A and the following limitations on discovery:

      **1.**      <u>**Scope of Discovery**</u>

      Discovery may be necessary regarding the subjects and issues identified in Cablevision's Amended Complaint and Viacom's Counterclaims, and including all Trial Issues identified in Section H.1 of this Report.

Cablevision anticipates discovery of the following subjects and issues, among others: (a) Viacom's market power in the tying product market(s); (b) the definition of the tying product market(s); (c) the extent of commerce foreclosed by Viacom's coercive tying arrangement in the tied product market; (d) anticompetitive effects in the tied product market; (e) lack of business justification for Viacom's conduct; (f) Viacom's coercive conduct, including but not limited to negotiations related to the 2012 Tying Agreement for Core and Suite networks with Cablevision; (g) Viacom's licensing agreements with other distributors, including agreements conditioning licensing of Core Networks on carriage of Suite Networks or other programming networks; (h) Viacom's motivations for tying the Core and Suite Networks; (i) ratings for the Core and Suite Networks, including third party market research; (j) Viacom's profits from licensing Core and Suite networks; (k) damages Cablevision has suffered as a result of Viacom's tying practices; (l) the appropriate scope of injunctive relief; (m) Viacom's allegation that Cablevision intentionally made a material misrepresentation or omission; (n) Viacom's supposed reliance upon such a misstatement or omission in agreeing to the 2012 Tying Agreement; and (o) Viacom's claimed damages. Cablevision anticipates seeking discovery from multiple third parties. Discovery of other subjects and issues may become necessary. Cablevision does not admit that all of Viacom's proposed topics are necessarily appropriate topics of discovery.

Viacom anticipates discovery of the following subjects and issues, among others: (a) Cablevision was not coerced by Viacom to license the Suite Networks in order for it to license the Core Networks; (b) the relevant antitrust product market for the tying product market, (c) the relevant antitrust product market for the tied product market, (d) Viacom lacks market power in any tying product market, i.e., sufficient economic power in the tying product market to produce an appreciable restraint in the tied product market; (e) there is no likelihood that Viacom will

achieve market power in the tied product market even if there had been a tie; (f) there are no

anticompetitive effects in the tied product market, (g) the amount of interstate commerce in the

tied product market that is affected; (h) the business justification for Viacom's alleged conduct,

(i) Cablevision's ability to launch new services regardless of its carriage of the Suite Network; (j)

the appropriate scope of injunctive relief, (k) Cablevision's fraudulent inducement of Viacom to

enter into the 2012 Agreement by Cablevision's material misrepresentations or omissions to

Viacom, (l) Viacom's reliance on Cablevision's material misrepresentations or omissions in

agreeing to the 2012 Agreement, (m) Cablevision's alleged damages, and (n) Viacom's damages

as a result of Cablevision's fraudulent inducement.  Viacom anticipates seeking discovery from

multiple third parties.  Discovery of other subjects and issues may become necessary.  Viacom

does not admit that all of Cablevision's proposed topics are necessarily appropriate topics of

discovery.

### 2.   **Electronically Stored Information**

The parties anticipate that they will request the production of electronically stored

information ("ESI").  In accordance with Paragraph II(H) of the Pilot Project Procedures, the

parties are presently engaged in discussions regarding the scope and specifications of ESI

production and will endeavor to submit a stipulation for approval by the Court.

### 3.   **Depositions**

The parties agree that, in light of the significant number of potential third party

depositions, the initial number of depositions permitted by each party should be twenty (20)

rather than the limit of ten (10) depositions set forth in Fed. R. Civ. P. 30(a)(2)(A)(i), inclusive of

depositions noticed under Fed. R. Civ. P. 30(b)(6).  The parties reserve the right to request

additional depositions subject to the Court's approval.  The parties agree to negotiate in good

faith regarding the total number of depositions, inclusive of depositions of non-parties, per side. The parties reserve the right to oppose a request by another party to enlarge the number of permitted depositions.  The parties also agree to negotiate in good faith regarding depositions of trial witnesses named if not already deposed and of preservation depositions.

### 4.    Interrogatories

The Parties agree to abide by the limitation of twenty-five (25) interrogatories set forth in Fed. R. Civ. P. 33(a)(1), but reserve their right to request additional interrogatories beyond the twenty-five (25) subject to the Court's approval.  The parties agree to negotiate in good faith regarding the total number of interrogatories per side.  The parties reserve the right to oppose a request by another party to exceed 25 interrogatories.  The parties agree that no contention interrogatories need be answered until 30 days following the completion of all fact discovery.

### 5.    Requests for Admission

The parties agree to abide by the limitation of fifty (50) requests for admission set forth in Paragraph II(F) of the Pilot Procedures, but reserve the right to seek additional requests for admission pursuant to Fed. R. Civ. P. 36(a)(1)(A) beyond the fifty (50) requests for admission permitted by Paragraph II(F), including Requests for Admission made pursuant to Rule 36(a)(1)(B) relating to the genuineness of any described documents.  The parties reserve the right to oppose a request by another party to exceed that limit.

### 6.    Confidentiality Stipulation and Order

The parties are in the process of negotiating a Discovery Confidentiality Order pursuant to Fed. R. Civ. P. 26(c).  They hope to submit it to the Court for approval without the need for motion practice.

### H.   Trial (Topics 9, 18, 19):

#### 1.   Issues to be Tried

Cablevision anticipates that the following issues may be tried: (a) the definition of the tying product market(s); (b) Viacom's market power in the tying product market(s); (c) the scope of foreclosure in the tied product market from Viacom's tying arrangement; (c) Viacom's coercion of Cablevision to enter into the 2012 Tying Agreement; (d) Cablevision's damages; and (e) in a bench trial, the scope of appropriate injunctive relief.  Trial of other issues, including those relating to Viacom's counterclaims, may also become necessary.  Cablevision does not agree that there are certain issues as to which a mini-trial would be helpful.

Viacom anticipates that the following issues may be tried:  (a) Cablevision was not coerced to license the Suite Networks as a condition of its licensing of the Core Networks, (b) Viacom lacks market power in a properly-defined and relevant tying antitrust product market because it does not have sufficient economic power in a tying product market to produce an appreciable restraint in a relevant tied antitrust product market; (c) there are no anticompetitive effects in any alleged tied product market; (d) there is no likelihood that Viacom will achieve market power on the tied product market as a result of the alleged tie; (e) Cablevision fraudulently induced Viacom to enter into the 2012 Agreement; (f) Cablevision's alleged damages; (g) Viacom's damages; and (h) the scope of appropriate injunctive relief.  Trial of other issues may also become necessary.

#### 2.   Pretrial Order

The parties do not consent to waive the pretrial order.

#### 3.   Possible Trial-Ready Date

As set forth in Exhibit A, the parties leave the setting of a Trial-Ready Date to the discretion of the Court after consideration of dispositive motions.

**I.     Bifurcation (Topic 10):**  The parties do not anticipate seeking bifurcation of the issues arising in this case.  A separate bench proceeding on injunctive relief will be necessary should the jury return a verdict against Viacom on liability.

**J.     Class Certification (Topic 11):**  Cablevision does not presently seek to represent a class.  Accordingly, the parties do not anticipate any class certifications issues.

**K.     Settlement/Mediation/ADR (Topic 12):**  The parties have discussed the possibility of pursuing settlement discussions, mediation, or ADR and agree that such efforts would not be fruitful at this time.

**L.     Pleadings Sufficiency and Amendment (Topic 14):**  At this time, the parties do not anticipate seeking amendments to the pleadings.  Cablevision has until September 26, 2014, to respond to Viacom's counterclaim.

**M.     Joinder of Additional Parties (Topic 15):**  The parties' proposed deadline for joinder of additional parties is set forth in Exhibit A *infra*.

**N.     Experts (Topic 16):**  The parties' proposed schedule for expert discovery is set forth in Exhibit A and discussed in Part III(B) *infra*.

**O.     Damages (Topic 17):**  Cablevision seeks declaratory relief, permanent injunctive relief, treble damages, and its attorneys' fees, among other relief.  Cablevision is continuing to investigate the extent of its damages, and that investigation will continue through discovery. Viacom seeks declaratory relief, rescission, actual and punitive damages, including its attorneys' fees and costs of suit on Viacom's counterclaims.  Viacom is continuing to investigate the extent of its damages, and that investigation will continue through discovery.

**P.      Court Logistics and Mechanics (Topic 20):**  With respect to court logistics and mechanics (e.g., communication with the Court, streamlined motion practice, etc.), the parties will follow the procedures set forth in this Court's Individual Practices and the Pilot Project Procedures.

**Q.      Additional Meet and Confer Sessions (Topic 21):**  Except to the extent noted above, the parties do not anticipate the need for additional meet and confer sessions to continue to discuss issues raised at the initial conference among counsel.

**III.      Proposed Schedule for Fact and Expert Discovery**

With respect to Paragraph I(A)(2) of the Pilot Project Procedures, the parties propose the schedule set forth in Exhibit A.  As discussed above, the parties are also preparing a separate proposed order regarding the logistics of document discovery, and respectfully request the Court's permission to submit that proposed order at a later date, which includes provisions for the collection and production of ESI.

**A.      Deadline for Completion of Fact Discovery**

The parties propose that all fact discovery be completed by June 17, 2016 and the parties shall substantially complete their respective document productions no later than November 20, 2015.

**B.      Expert Disclosures and Depositions**

The parties propose that initial expert reports be served by August 12, 2016, and rebuttal expert reports must be served by October 14, 2016.  The parties propose that depositions of experts relating to the merits shall commence after the service of rebuttal expert reports, and the last day to complete such depositions shall be November 18, 2016.

C.      **Deadline for Filing Dispositive Motions**

The parties propose that any motion(s) for summary judgment (or other dispositive

motions) be filed no later than January 27, 2017, that any opposing papers be filed no later than

March 24, 2017, and that any reply papers be filed by April 28, 2017.

Other proposed dates appear in Exhibit A attached hereto.

IV.   <u>**Settlement Discussions**</u>

With respect to Paragraph I(A)(3) of the Pilot Project Procedures, and as noted above, the

parties state that they do not propose to engage in settlement discussions or mediation at this time.

**Exhibit A**

**Proposed Schedule of Pretrial and Trial Dates**

| Matter | Parties' Proposed Schedule |
|---|---|
| Rule 26(a) Disclosures | October 1, 2014 |
| Last day to serve first set of party document requests | October 1, 2014 |
| Last day to file motions to add parties or amend pleadings | November 3, 2014 |
| Last day to serve supplemental party document requests | June 17, 2015 |
| Substantial completion of party document production | November 20, 2015 |
| Fact discovery cut-off | June 17, 2016 |
| Joint Preliminary Trial Report | June 30, 2016 |
| Case Management Conference | At the convenience of the Court, but no earlier than July 8, 2016 |
| Last day to serve initial expert reports | August 12, 2016 |
| Last day to serve rebuttal expert reports | October 14, 2016 |
| Expert discovery cut-off and last day to depose experts | November 18, 2016 |
| Last day to file *Daubert* motions | January 27, 2017 |
| Last day to file dispositive motions | January 27, 2017 |
| Opposition papers to dispositive motions due | March 24, 2017 |
| Reply papers to dispositive motions due | April 28, 2017 |
| Joint Final Trial Report | As directed by the Court after consideration of dispositive motions |
| Final Pretrial Conference | As directed by the Court after consideration of dispositive motions |
| Trial Ready Date | As directed by the Court after consideration of dispositive motions |

August 29, 2014


ROPES & GRAY LLP
*Attorneys for Plaintiffs Cablevision Systems*
*Corporation and CSC Holdings, LLC*

BY: [s] Mark S. Popofsky
    Jerome C. Katz
    1211 Avenue of the Americas
    New York, New York  10036
    Telephone: (212) 596-9000
    Facsimile:  (212) 596-9090

    Mark S. Popofsky (*Admitted Pro Hac Vice*)
    Mariel Goetz (*Admitted Pro Hac Vice*)
    One Metro Center
    700 12th Street, N.W.
    Washington, D.C. 20005
    Telephone:   (202) 508-4600
    Facsimile:    (202) 508-4650

    Matthew L. McGinnis (*Admitted Pro Hac Vice*)
    800 Boylston Street
    Boston, MA  02199
    Telephone:  (617) 951-7567
    Facsimile:   (617) 235-9740


SIMPSON THACHER & BARTLETT LLP
*Attorneys for Defendants Viacom International*
*Inc. and Black Entertainment Television LLC*

BY:  [s] Joseph F. Tringali
    Joseph F. Tringali
    David Elbaum
    Peri L. Zelig
    425 Lexington Avenue
    New York, New York 10017
    Telephone: (212) 455-2000
    Facsimile:  (212) 455-2502

    Kenneth R. Logan, Of Counsel


I have received the consent of Joseph F. Tringali to file this document with his electronic signature.

[s] Mark S. Popofsky