UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CABLEVISION SYSTEMS CORPORATION and CSC HOLDINGS, LLC,<br><br>    Plaintiffs,<br><br>    - against -<br><br>VIACOM INTERNATIONAL INC. and BLACK ENTERTAINMENT TELEVISION LLC,<br><br>    Defendants. | Case No. 13 Civ. 1278 (LTS) (JLC) |

---

## A&E TELEVISION NETWORKS, LLC'S, NBCUNIVERSAL MEDIA, LLC'S, AND STERLING ENTERTAINMENT ENTERPRISES, LLC T/A SPORTSNET NEW YORK'S MEMORANDUM IN OPPOSITION TO VIACOM'S MOTION TO COMPEL

---

HOLLAND & KNIGHT LLP

Cheryl A. Feeley (CF1441)
Charles D. Tobin (*Pro Hac Vice* to be submitted)
800 17th St. NW, Suite 1100
Washington, DC 20006
Tel: (202) 955-3000
Fax: (202) 955-5564
Email: cheryl.feeley@hklaw.com
Email: charles.tobin@hklaw.com

*Attorneys for Intervenors A&E Television Networks, LLC, NBCUniversal Media, LLC, and Sterling Entertainment Enterprises, LLC t/a SportsNet New York*

**REQUEST FOR ORAL ARGUMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT ........................................................................................................................... 4

I.     THE PARTIES ACKNOWLEDGE THE REQUESTED DOCUMENTS REFLECT
       AETN'S, NBCUNIVERSAL'S AND SNY'S TRADE SECRETS AND WOULD
       RESULT IN SERIOUS HARM IF DISCLOSED. ................................................... 4

II.    VIACOM HAS FAILED TO SHOW ANY PURPORTED NEED FOR AETN'S,
       NBCUNIVERSAL'S, OR SNY'S CONFIDENTIAL INFORMATION THAT
       OUTWEIGHS THE HARM TO THE NON-PARTIES. .......................................... 7
   A.   THE PERMISSIBLE SCOPE OF DISCOVERY IS NOT BOUNDLESS, AND DISCOVERY OF
        HIGHLY CONFIDENTIAL COMPETITIVE INFORMATION SHOULD BE CLOSELY REGULATED... 7
   B.   VIACOM'S ASSERTIONS OF HYPOTHETICAL RELEVANCY ARE INADEQUATE AND
        FLAWED. ................................................................................................... 10
   C.   THE HARM TO AETN, NBCUNIVERSAL, AND SNY GREATLY OUTWEIGHS VIACOM'S
        HYPOTHETICAL INTEREST IN OBTAINING THE INFORMATION............................ 14

III.   VIACOM IS NOT ENTITLED TO THE PRODUCTION OF ANY DOCUMENTS
       ON THIS RECORD.................................................................................................. 15

IV.    THE AMENDED PROTECTIVE ORDER DOES NOT ADEQUATELY PROTECT
       AETN'S, NBCUNIVERSAL'S, OR SNY'S CONFIDENTIAL INFORMATION. ........... 16
   A.   THE AMENDED PROTECTIVE ORDER ALLOWS VIACOM AND CABLEVISION TO CONTROL
        DESIGNATIONS AND DISCLOSURE. .................................................................. 17
   B.   THE ADDITIONAL NOTICE PROVISION DOES NOT PROTECT NON-PARTIES....................... 18
   C.   THE AMENDMENTS PROSCRIBING DISCLOSURE TO COUNSEL INVOLVED IN
        "COMPETITIVE DECISION-MAKING" ARE INSUFFICIENT.................................... 18
   D.   THE AMENDED PROTECTIVE ORDER ALLOWS INDUSTRY EXPERTS TO VIEW
        THE CONFIDENTIAL MATERIALS EVEN IF INVOLVED IN "COMPETITIVE DECISION-
        MAKING". .............................................................................................. 19

CONCLUSION........................................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*A Major Difference, Inc. v. Wellspring Products, LLC*,
243 F.R.D. 415 (D. Colo. 2006) ................................................................... 10

*BSN Med., Inc. v. Parker Med. Associates, LLC,*
No. 10 MISC 15, 2011 WL 197217 (S.D.N.Y. Jan. 19, 2011) ...................................... 10

*CBS Corp. v. F.C.C.*,
785 F.3d 699 (D.C. Cir. 2015) ..................................................................... 6

*Echostar Commc'ns Corp. v. News Corp.*,
180 F.R.D. 391 (D. Colo. 1998) .................................................................9, 10

*Fleming Sales Co. v. Bailey,*
611 F. Supp. 507 (N.D. Ill. 1985) .................................................................. 20

*Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*,
138 F.R.D. 530 (C.D. Ill. 1991) .................................................................... 20

*Herbert v. Lando*,
441 U.S. 153 (1979)................................................................................. 8

*In re Dana Corp.*,
574 F.3d 129 (2d Cir. 2009)........................................................................ 6

*In re Iams Co. Litig.*,
No. C-3-90-014, 1992 WL 1258515 (S.D. Ohio July 23, 1992) ................................... 13

*In Re Vitamins Antitrust Litig.*,
267 F. Supp. 2d. 738 (S.D. Ohio 2003) ........................................................... 16

*Insulate Am. v. Masco Corp.*,.
227 F.R.D. 427 (W.D.N.C. 2005)................................................................... 16

*Litton Indus, v. Chesapeake & Ohio Ry.*,
129 F.R.D. 528 (E.D. Wis. 1990) ............................................................. 16, 20

*Mannington Mills v. Armstrong World Indus., Inc.*,
206 F.R.D. 525 (D. Del. 2002) .................................................................... 10

*Med. Billing Consultants Inc. v. Intelligent Med. Objects*,
No. 01 C 9148, 2003 WL 1809465 (N.D. Ill. Apr. 4, 2003)......................................... 16

*Micro Motion, Inc. v. Kane Steel Co., Inc.*,
>    894 F.2d 1318 (Fed. Cir. 1990)......................................................................... 15

*N. Atl. Instruments, Inc. v. Haber*,
>    188 F.3d 38 (2d Cir. 1999) .............................................................................. 6

*Nova Biomedical Corp. v. i-STATCorp.*,
>    182 F.R.D. 419 (S.D.N.Y. 1998) ..................................................................... 8

*Premier Election Solutions, Inc. v. Systest Labs Inc.*,
>    No. CIVA 09CV01822WDMKMT, 2009 WL 3075597 (D. Colo. Sept. 22, 2009)...... 10

*R.J. Reynolds Tobacco Co. v. Philip Morris Inc.*,
>    199 F. Supp. 2d 362 (M.D.N.C. 2002) ............................................................ 13

*Rebel Oil Co. v. Atl. Richfield Co.*,
>    51 F.3d 1421, 1435 (9th Cir. 1995) ................................................................ 13

*RLS Assocs., LLC v. United Bank of Kuwait, PLC*,
>    No. 01 Civ. 1290, 2003 WL 1563330 (S.D.N.Y. Mar. 26, 2003) ................................. 8

*Solarex Corp. v. Arco Solar, Inc.*,
>    121 F.R.D. 163 (E.D.N.Y. 1988)..................................................................... 10

*Viacom Int'l, Inc. v. YouTube Inc.*,
>    253 F.R.D. 256 (S.D.N.Y. 2008) ...............................................................8, 9, 16

**Other**

Federal Communications Commission, *Annual Assessment of the Status of Competition
>    in the Market for the Delivery of Video Programming*, Sixteenth Report,
>    (released April 2, 2015), https://www.fcc.gov/document/fcc-adopts-
>    16th-video-competition-report......................................................................... 12

National Cable & Telecommunications Association, *Industry Data*
>    (July 22, 2015),  https://www.ncta.com/industry-data................................................. 12

**Rules**

Fed. R. Civ. P. 26...........................................................................................8, 9

Non-parties A&E Television Networks, LLC ("AETN"), NBCUniversal Media, LLC ("NBCUniversal"), and Sterling Entertainment Enterprises, LLC t/a SportsNet New York ("SNY", and collectively with NBCUniversal, "NBCUniversal/SNY") file this opposition to the Motion to Compel of Viacom, Inc. and Black Entertainment Television LLC (collectively, "Viacom"), seeking disclosure of non-parties' highly confidential proprietary information and trade secrets.

## PRELIMINARY STATEMENT

Viacom's Motion to Compel is an attempt to obtain nearly a decade's worth of documents reflecting its competitors' most closely protected proprietary and confidential business information, including contract provisions, rate information, and negotiation strategies. Cablevision's complicity in this process, where the parties agreed to not oppose one another's motions to compel, reflects a transparent effort by the parties to be relieved of their obligations to maintain confidentiality where it suits their tactical litigation interests. The Court should not relieve Cablevision of its duties to non-parties under these circumstances—especially where the potential competitive harm is so great and the parties have made no effort to narrow the scope of these discovery requests, explore alternative means of presenting their cases without trade secret information, or even provide AETN and NBCUniversal/SNY with a preview of the highly confidential information that Cablevision intends to disclose.

Indeed, Cablevision has not even pressed Viacom, which has vehemently opposed disclosures of its own confidential information, to show any real relevancy of these non-party programmers' most closely-guarded trade secrets. In support of its broad request, Viacom largely asserts that the information *may be* relevant. The law is clear, however, that a court should protect a non-party's trade secrets absent a clear demonstration of need, an exploration of alternatives, and a close consideration of the potential harm from disclosure.

1

Viacom and Cablevision seek to sidestep this careful analysis and expose AETN and NBCUniversal/SNY to extreme competitive harm by pointing to amendments to a stipulated protective order. But this Court should not even reach the issue of a protective order until Viacom has established its entitlement under the law to any of this highly competitive information. In any event, the stipulated protective order is deeply flawed, will furnish virtually no protection, and barely contemplates any further consultation with, or consideration of, AETN's and NBCUniversal/SNY's concerns during the remainder of this litigation.

As more fully explained below, because this manufactured discovery dispute comes before any real showing of relevancy or necessity, the parties have not meaningfully discharged their meet-and-confer obligations, and a protective order will not adequately protect the industry's most closely-held trade secrets. Thus, the Court should deny Viacom's Motion to Compel and also grant any relief necessary to protect disclosure of AETN's, NBCUniversal's, and SNY's highly confidential information.

## STATEMENT OF FACTS

From the first notice of this issue, AETN and NBCUniversal/SNY, through counsel, each sought a clear explanation of the relevancy of their information to this dispute, what alternatives had been explored, and precisely what information would be disclosed. The parties consistently declined to provide any real responses before filing their motions to compel.

In late March and early April 2015, Cablevision notified AETN, NBCUniversal, and SNY, respectively, that Cablevision had identified information in its possession that the entities may consider confidential and/or proprietary and that Cablevision intended to disclose such information. (*See* Decl. of D. Bailey ¶ 3; Decl. of D. Kummer ¶ 3.) Subsequent to that notification, AETN and NBCUniversal/SNY sought additional detail on the documents to be produced, requested clarification of how their agreements were relevant, and reiterated that the agreements

2

and surrounding communications contain extremely sensitive competitive information.  (Decl. of D. Bailey ¶ 4; Decl. of D. Kummer ¶ 4.)  Specifically, on March 26, 2015, AETN advised Cablevision that AETN would like to better understand the nature of the dispute between Cablevision and Viacom and why the parties that contend AETN and Cablevision's agreement may be relevant to that dispute.  (Decl. of D. Bailey ¶ 5.)  AETN discussed its concerns with Cablevision on March 30, 2015, and the following day requested that Cablevision send the universe of AETN documents that Cablevision had identified as relevant, as well as Cablevision's anticipated designations pursuant to the protective order.  (Decl. of D. Bailey ¶ 6.)  Counsel for Cablevision responded that the process of collection and review was ongoing, but that a list of documents would be provided.  (*Id.*)  On April 8, 2015, AETN again wrote to Cablevision, formally denied consent to the production of AETN documents, and requested immediate notice of the filing of any motion to compel.  (Decl. of D. Bailey ¶ 7.)  NBCUniversal/SNY similarly advised that it "strongly objects to the production" of confidential documents and also made clear that it expected Cablevision to identify the documents Cablevision identified as responsive to the document requests.  (Decl. of D. Kummer ¶ 4.)

In late May and June 2015, counsel for Cablevision and counsel for Viacom had separate discussions with counsel for AETN and NBCUniversal/SNY.  (Decl. of C. Feeley ¶ 2; Decl. of D. Kummer ¶ 5.)  During those conversations, AETN and NBCUniversal/SNY reiterated their concerns with the potential production of documents by Cablevision and again inquired as to their relevancy.  (*Id.*)  Viacom's counsel merely explained that the documents will evidence the "market conditions" and therefore are relevant. (Decl. of C. Feeley ¶ 3.)  During teleconferences amongst counsel for Viacom, Cablevision, AETN, and NBCUniversal/SNY, the non-parties inquired whether the parties had considered narrowing or streamlining the scope of documents sought.

Counsel for Viacom responded that it was not possible to narrow the scope without seeing the documents first. (Decl. of C. Feeley ¶ 3; Decl. of D. Kummer ¶ 6.) Counsel for Viacom and Cablevision also confirmed that they had reached an agreement whereby Cablevision would produce information related to certain top programmers and, in exchange, Viacom would produce information related to certain top MVPDs and other distributors. (Decl. of D. Kummer ¶ 6.) Significantly, they reached such agreement without regard to these non-parties' individual business models and with no effort to narrow the precise confidential information about each.

Also during a teleconference amongst counsel, counsel for AETN requested that Cablevision identify the documents that had been identified for production that implicate AETN information. (Decl. of C. Feeley ¶ 3.) To date, Cablevision has not provided any information beyond a listing of contract documents. (Decl. of C. Feeley ¶ 4.)

Given the inadequacy of this meet-and-confer record, AETN and NBCUniversal/SNY remain in the dark about most of the documents and information that Cablevision has determined fall within discovery requests. This places AETN and NBCUniversal/SNY in the untenable position of carrying the burden of opposition to Viacom's Motion to Compel, but without the benefit of knowing what unknown, but likely large, volume of information may be disclosed.

## ARGUMENT

**I.    The Parties Acknowledge the Requested Documents Reflect AETN's, NBCUniversal's, and SNY's Trade Secrets and Would Result in Serious Harm if Disclosed.**

The parties do not dispute that this friendly discovery proceeding would result in Viacom gaining access to the most closely-guarded information in the cable television industry. Nor could they. For its part, Cablevision is legally obligated not to disclose its written negotiations or agreements with AETN, NBCUniversal, or SNY. (*See* Decl. of D. Zagin ¶ 10; Decl. of K. Brockhage ¶ 11.)

4

As for Viacom, in this litigation it argued for, and won, the right to protection of the same type of information it now seeks with respect to its competitors.  (*See* March 7, 2013 Minute Order.)  Viacom secured this Court's protection for its own information by arguing that it "has strenuously safeguarded its rights to keep the terms and conditions of its License Agreements confidential." (Dkt. No. 5 at 6.)  It supported this argument through declaration testimony that: (i) it consistently has "treated the terms and conditions of the license agreements [that it] enter[ed] into with [its] distributors as confidential, proprietary information that is both commercially and competitively sensitive"; (ii) "the disclosure of such information would harm [Viacom] both with regard to [its] customers - the distributors of [its] services - and the numerous programming services [it] compete[s] against to obtain distribution for our services"; (iii) its agreements' price and non-price terms are heavily negotiated; "it is for that reason that [Viacom] guard[s] jealously the confidentiality of such terms and conditions"; and (iv) competitors who obtain "non-reciprocal knowledge" would exploit it to Viacom's disadvantage.  (Dkt. No. 6 at ¶¶ 2, 5, 6.)

Similarly, in December 2014, Viacom (along with other programmers), in another proceeding, sought to prevent the Federal Communications Commission from disclosing Viacom's affiliation agreements, pricing information, and negotiation records, given the likelihood of competitive harm caused by such disclosure.  (*See* Decl. of Denise Denson ¶ 3, *CBS Corp. v. FCC*, No. 14-1242 (D.C. Cir. Nov. 13, 2014) (Doc. No. 1522082)).  Viacom attested in its declaration:

- Viacom's affiliation agreements contain highly sensitive information that is central to Viacom's business strategy.  The information in these agreements includes pricing and other highly proprietary business terms.  (*Id.* at ¶ 3.)

- Viacom's affiliation agreements, including the price terms of those agreements, are among the most closely guarded information at Viacom. (*Id.* at ¶ 4.)

- [A] distributor that knows the terms of Viacom's affiliation agreements […] would have an unfair advantage in negotiating its own agreement with Viacom. A distributor that knows the terms of Viacom's most significant affiliation agreements would have no incentive to negotiate or arbitrate reasonable rates or other terms and conditions during its contract negotiations. (*Id.* at ¶ 7.)

Indeed, in that case, the Court of Appeals for the D.C. Circuit ruled that the FCC's order requiring media companies to disclose their contracts was "substantially and procedurally flawed" and that the FCC failed to show that information in question was a key element of the review process. *CBS Corp. v. F.C.C.*, 785 F.3d 699, 700 (D.C. Cir. 2015). The Second Circuit similarly recognizes the confidential and propriety nature of the information being sought by Viacom. *See In re Dana Corp.,* 574 F.3d 129, 152 (2d Cir. 2009) ("confidential proprietary data relating to pricing, costs, systems, and methods are protected by trade secret law."); *N. Atl. Instruments, Inc. v. Haber,* 188 F.3d 38, 44 (2d Cir. 1999) (New York courts define a "trade secret" as "any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it.").

In the declarations submitted herewith, AETN and NBCUniversal/SNY explain the confidential nature of information being sought as well as the harm that each entity would suffer upon disclosure. The business of packaging programming into networks to provide to distributors is highly competitive. (*See* Decl. of D. Zagin ¶ 7; Decl. of K. Brockhage ¶ 8.) The distribution agreements are heavily negotiated commercial arrangements, and the resulting terms are extremely commercially sensitive. (Decl. of D. Zagin ¶ 7; Decl. of K. Brockhage ¶ 8.) During the negotiation of new distribution agreements, these non-parties discuss competitively sensitive terms such as the scope of the license to the distributor, permissible technology for distribution, applicable rates, and most-favored-nations obligations. (*See* Decl. of D. Zagin ¶ 9; Decl. of K. Brockhage ¶ 11.) The confidentiality of the affiliation agreements is central to AETN's, NBCUniversal's, and SNY's

6

business strategies, and they do not publicly release these terms.  (Decl. of D. Zagin ¶ 11; Decl. of K. Brockhage ¶ 12.)

If the terms of the agreements were revealed to any of AETN's, NBCUniversal's, or SNY's competitors, including Viacom or BET, the results would be severely damaging.  (Decl. of D. Zagin ¶ 12; Decl. of K. Brockhage ¶ 13.)  By gaining access to the non-parties' pricing information, packaging requirements, and other proprietary business information, a competitor would be able to refine its own distribution strategy, would be able to act strategically to price and market its own services, and would gain an unfair advantage in negotiating agreements with distributors.  (*Id.*) Similarly, if the terms of these agreements were revealed to any other distributor with whom AETN or NBCUniversal/SNY has agreements, that distributor would have an unfair advantage in future negotiations with AETN or NBCUniversal/SNY, seeking for themselves any perceived advantages, concessions, or distinctions from the deals with Cablevision.  (Decl. of D. Zagin ¶ 13; Decl. of K. Brockhage ¶ 14.)  Likewise, an entity that licenses content to AETN, NBCUniversal, or SNY would be able to leverage such information to the competitive disadvantage of these entities in negotiating future licensing deals.  (*Id.*)

II.    **Viacom Has Failed to Show Any Purported Need for AETN's, NBCUniversal's, or SNY's Confidential Information that Outweighs the Harm to the Non-Parties.**

A.    **The Permissible Scope of Discovery is Not Boundless, and Discovery of Highly Confidential Competitive Information Should be Closely Regulated.**

The permissible scope of discovery under the Federal Rules is not unlimited and is not as broad as Viacom suggests.  Rule 26(b)(1) requires that discovery be "relevant to any party's claim or defense."  "Relevance" is not a meaningless touchstone to be given mere lip service.  As the Supreme Court has explained, "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where justice requires [protection for] a party or person from

7

annoyance, embarrassment, oppression, or undue burden or expense." *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (alterations in original, internal citations omitted). *See Viacom Int'l, Inc. v. YouTube Inc.,* 253 F.R.D. 256, 260 (S.D.N.Y. 2008) (holding that, given the highly confidential nature of Google's source code for YouTube, disclosure was unwarranted "merely to allay speculation" that code would support the plaintiff's copyright claim).

Accordingly, bald assertions by the party seeking discovery that the information sought is "relevant to the subject matter involved in the action" are not enough; rather, the information must instead be relevant to the specific claims or defenses at issue. *See, e.g., RLS Assocs., LLC v. United Bank of Kuwait, PLC*, No. 01 Civ. 1290, 2003 WL 1563330, at *7-8 (S.D.N.Y. Mar. 26, 2003) (denying discovery of materials not relevant to parties' "specific claims and defenses"). In addition to relevance, the court will look to the requesting party's need for the documents, the breadth of the document requests, and the time period covered by the requests. *See Nova Biomedical Corp. v. i-STATCorp.*, 182 F.R.D. 419, 422-23 (S.D.N.Y. 1998). Indeed, Rule 26(b)(2)(C)(i) imposes a proportionality test whereby a court can provide for restrictions on discovery – even if the requested information is relevant – where the "discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive".

Furthermore, courts routinely enter protective orders "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). Courts often deny *any* discovery of competitively sensitive information – *even when* the requesting party proposes production pursuant to a strong protective order. For example, in *Viacom Int'l, Inc. v. YouTube Inc.,* Judge Stanton denied Viacom discovery from Google of YouTube's source code, which Viacom claimed was necessary to establish its copyright claim. 253 F.R.D. at 260. As here, Viacom urged that the Court adopt a

8

confidentiality order.  The Court recognized that the secrecy of the source code "is of enormous commercial value" and that anyone receiving it could "cause catastrophic competitive harm to Google by sharing [it] with others who might create their own programs." *Id.* at 259.  The Court noted that Viacom had not adequately supported its claim that discovery of this trade secret was necessary, and that "there may be other ways" Viacom had not explored to establish its claim and defeat Google's defenses.  With that record, the Court held that Viacom's proposed protective order was inappropriate:

> Finally, the protections set forth in the stipulated confidentiality order are careful and extensive, but nevertheless not as safe as nondisclosure. There is no occasion to rely on them, without a preliminary proper showing justifying production of the search code.

*Id.* at 260.

Courts have also recognized the special consideration that must be given when non-parties' trade secret information is sought in discovery.  *Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391, 394-96 (D. Colo. 1998) (denying motion to compel where non-party established that "the information sought is a trade secret, and demonstrate that its disclosure might be harmful" and where requesting party did not show substantial need for the documents requested from a non-party); *Premier Election Solutions, Inc. v. Systest Labs Inc.*, No. CIVA 09CV01822WDMKMT, 2009 WL 3075597, at *3 (D. Colo. Sept. 22, 2009) (denying request, finding party's discovery requests to non-party were broad and undeniably involved production of trade secret information that was, at best, only marginally relevant, and noting that seeking discovery from a non-party for purposes other than the litigation is improper).  Accordingly, courts are reluctant to compel disclosure of confidential information from non-parties like AETN and NBCUniversal.

With discovery requests involving highly confidential information, courts consistently undertake a three-prong inquiry:

*First*, the court considers whether the non-party seeking protection has shown that the information sought is a trade secret or otherwise confidential, and that its disclosure might be harmful. *EchoStar Commc'ns Corp.,* 180 F.R.D. at 396; *Solarex Corp. v. Arco Solar, Inc.,* 121 F.R.D. 163, 179 (E.D.N.Y. 1988) (denying request for disclosure of the identity of independent reviewer who examined manuscript submitted to scholarly journal for publication, notwithstanding defendant's contention that disclosure was relevant).

*Second*, the court looks to whether the party seeking the discovery has established that the information is relevant and necessary to the underlying action. *See BSN Med., Inc. v. Parker Med. Associates, LLC,* No. 10 MISC 15, 2011 WL 197217, at *2 (S.D.N.Y. Jan. 19, 2011).

*Third*, assuming the first two inquiries are answered in the affirmative, the court balances the need for discovery of the information against the alleged injury that will result from disclosure. *See A Major Difference, Inc. v. Wellspring Products, LLC,* 243 F.R.D. 415, 416–17 (D. Colo. 2006); *Mannington Mills v. Armstrong World Indus., Inc.,* 206 F.R.D. 525, 528–29 (D. Del. 2002).

Here, there is no dispute that the information being sought from the non-parties are trade secrets. And, as explained below, Viacom has not established that such information is relevant or necessary to the underlying action, and the Court should therefore refuse Viacom's request for compelled disclosure.

### B.   Viacom's Assertions of Hypothetical Relevancy are Inadequate and Flawed.

Viacom seeks an enormous volume of discovery: eight years' worth of all of its major competitors' most confidential business information. Yet Viacom has failed to articulate its claims or defenses or how the requested documents are even arguably relevant to those claims or defenses, as required by Rule 26(b)(1). Viacom has similarly failed to establish the lack of alternative

10

sources of information to prove those claims or defenses, as required when a requestor seeks trade secret information.

The Court should not abide the parties' mutual desire to abrogate the law's protections of non-parties from crippling discovery and to avoid their legal obligations to protect non-party trade secrets. Rather than sanction the parties' discovery agreement, the Court should demand a bona fide explanation of what specific information the requesting party believes it needs and why. Viacom has provided no such explanation. Instead, Viacom's motion makes only generalized arguments about why its competitors' highly confidential information is relevant and discoverable. None of these arguments meets the threshold for relevance or need for the AETN, NBCUniversal, and SNY agreements and documents.

Viacom initially claims entitlement to the non-parties' affiliation agreements and surrounding written communications because they "often contain heavily-negotiated target audience, demographics and content descriptions for channels." (Dkt. No. 97 at 17.) Viacom contends that such information will provide "insights into who watches what and why" and "will help inform the question of which programming is substitutable for Viacom content." (*Id.* at 18.) Viacom fails to articulate how eight years' worth of information on "target audience, demographics, and content descriptions" would be relevant to establishing what programming may have been substitutable at the time of the execution of the single disputed Cablevision-Viacom contract. (*Id.* at 17.) Indeed, this argument is more likely to be supported by non-confidential data about viewership patterns, ratings, channel and packaging listings. Likewise, Viacom has failed to explain why it cannot obtain information on "target audience, demographics, and content descriptions" from a host of alternative public sources such as programmers' websites, SEC filings, FCC filings, or industry sources such as SNL Kagan and Nielsen, such that it could credibly argue

11

that it *needs* the highly confidential contracts it seeks.  *See generally* Federal Communications Commission, *Annual Assessment of the Status of Competition in the Market for the Delivery of Video Programming*, Sixteenth Report, (released April 2, 2015), https://www.fcc.gov/document/fcc-adopts-16th-video-competition-report; National Cable & Telecommunications Association, *Industry Data*, (July 22, 2015), https://www.ncta.com/industry-data.

Next, Viacom contends that the prices and terms of carriage of its competitors "may" inform what type of programming is in the same market. (Dkt. No. 97 at 19.) In hedging on whether the prices and terms of carriage "may" (or, presumably, "may not") inform the type of programming in the same market, Viacom admits that it is not sure whether it needs the data at all. What Viacom clearly means is that it wants the data to learn, after review, whether it supports Viacom's theory of the case. Further, Viacom's explanation of why such information "may" be relevant to any claim or defense in this case is murky at best, vaguely mentioning that it contends "there is one larger market for general programming". (*Id.*) Viacom does not explain why pricing information between Viacom's competitors and Cablevision is relevant to defining any programming market or proving the existence of a "larger market for general programming". (*Id.*) Likewise, Viacom does not explain how eight years' worth of such information is relevant to any defense that involves defining a market as it existed at the time of the execution of the contract. And again, Viacom fails to show that other sources of data cannot establish the existence of that larger market, such that Viacom could show that it *needs* any trade secret information from its competitors for *any* period of time.[1]  Again, extensive non-confidential information about

---

[1] In support of its argument that the pricing information of its competitors is relevant to defining a relevant market, Viacom cites *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1435 (9th Cir. 1995). (Dkt. No. 97 at 19.) But, *Rebel Oil* involved a comparison of the *publicly available* pricing information of self-serve, cash-only gasoline and full-serve gasoline in determining the relevant market.

programming services, how they are viewed, and how they are packaged by distributors is readily available for Viacom's use here.

Viacom additionally argues its competitors' written negotiations are relevant to whether Cablevision was coerced into taking Viacom's bundled channels. Viacom argues, without citation, that "the fact-finder will need to assess . . . in particular how Cablevision responded to other programmers who have made similar pricing offers." (*Id.* at 14.) But learning the history of Cablevision's negotiations with others (at different points in time and under different circumstances) is not probative of whether Cablevision was coerced in its negotiation with Viacom—the relevant facts will be related to the negotiations between Viacom and Cablevision.

Viacom also asserts that it needs competitors' highly confidential pricing information for purposes of giving context to potential evidence by Cablevision that Viacom raises prices despite declines in ratings.[2] Viacom argues that without the information "the fact-finder will be left to assess pricing evidence in a vacuum, which would lack any meaningful probative value." (*Id.* at 15-16.) This argument implicitly acknowledges that any evidence or argument presented by Cablevision about Viacom's pricing increases would *not* be probative (or admissible) without comparison to industry-wide trends. Thus, Viacom is clearly able to challenge the admissibility of any evidence proffered and respond to argument by Cablevision by explaining the lack of probative value, as it did here. Viacom therefore does not *need* eight years of competitors' information to defend against Cablevision on this point.

---

[2] On this point, Viacom cites *In re Iams Co. Litig.*, No. C-3-90-014, 1992 WL 1258515, at *4 (S.D. Ohio July 23, 1992) and *R.J. Reynolds Tobacco Co. v. Philip Morris Inc.*, 199 F. Supp. 2d 362, 367 (M.D.N.C. 2002) for the proposition that "broader pricing trends in the industry, including pricing discussions during the course of negotiations, will be relevant to Viacom's defense against this claim." (Dkt. 97 at 20.) Again, these cases dealt with *publicly available* industry-wise pricing information, and notably did not discuss the disclosure of competitors' *confidential* pricing information.

Finally, Viacom argues that, to support an everybody-is-doing-this defense, it needs discovery of its competitors' alleged bundling practices. Its reasoning for this request is murky at best. Viacom first argues that this discovery *may* be relevant to whether Viacom's practice reflects an industry practice rather than market power. (*See* Dkt. 97 at 19.) Viacom later asserts that the discovery of this highly confidential information will support its defenses to "causation". (*Id.* at 21.) Yet regardless of which way Viacom may pivot its argument, Viacom undoubtedly has access to industry literature and other non-confidential data to establish its basic assertion that bundling practices are common in the industry. Viacom can sufficiently establish the prevalence of bundling in the industry without the highly confidential and commercially sensitive information from AETN, NBCUniversal, and SNY.

### C.    The Harm to AETN, NBCUniversal, and SNY Greatly Outweighs Viacom's Hypothetical Interest in Obtaining the Information.

Given Viacom's failure to provide grounds that the information is relevant, necessary, and entirely unavailable from other sources, Viacom cannot claim its need outweighs the serious harm to AETN, NBCUniversal, and SNY from the disclosure it seeks. As described in detail in Section I above, the disclosure that Viacom seeks—and that Cablevision would willingly enable—will give competitors an unfair advantage in negotiating its own agreements with distributors and will give any distributors an unfair advantage in future negotiations with AETN or NBCUniversal/SNY. Further, it would allow content licensees to understand how these entities value their networks for purposes of distribution agreements and would use such information to its advantage in future licensing deals. Given that Viacom only provides a scant showing of alleged relevance and does not address any particular need for the information sought, Viacom's interests are easily outweighed by the legitimate concerns of AETN, NBCUniversal, and SNY.

14

**III.    Viacom is not Entitled to the Production of any Documents On This Record.**

Rather than engage in any real analysis of their needs or appropriately tailor their discovery, the parties ask the Court to "compel" the production, subject to the protections purportedly provided in the Amended Protective Order (*see* Dkt. No. 86).  No matter how restrictive the Protective Order, however, Cablevision contemplates disclosing a huge amount of data that, as to AETN and NBCUniversal, it has yet to even cull and examine, and that it refuses to share in advance with the non-parties.  Moreover, with inadequate provisions for even wider objections, the protective order will leave AETN and NBCUniversal powerless to protect themselves from further exposure of their highly confidential information for the remainder of this litigation.

Under precedent, this Court should not compel production until the parties establish that they have satisfied the stringent standard for this type of non-party discovery.  A "protective order is *not a substitute for establishing relevance or need*." *Micro Motion, Inc. v. Kane Steel Co., Inc.,* 894 F.2d 1318, 1325 (Fed. Cir. 1990) (reversing district court's order, on the basis that a party failed to make appropriate preliminary showing, of disclosure of non-party competitor's sales data) (emphasis added).  Courts recognize that "[t]here is a constant danger inherent in disclosure of confidential information pursuant to a Protective Order. Therefore, the party requesting disclosure must make a strong showing of need, especially when confidential information from a non-party is sought." *Insulate Am. v. Masco Corp.,* 227 F.R.D. 427, 434 (W.D.N.C. 2005) (quoting *Litton Indus., Inc. v. Chesapeake & Ohio Ry.,* 129 F.R.D. 528, 531 (E.D. Wis. 1990)).

As noted above in Section II.A., courts, including judges of this Court, often deny discovery of sensitive information even when a party proposes a purportedly strong protective order.  *See Viacom Int'l, Inc.,* 253 F.R.D. at 260 (Judge Stanton denies discovery of YouTube's source code despite Viacom's urging of a protective order).  *See also Litton Indus., Inc.*, 129 F.R.D.

at 531 ("There is a constant danger inherent in disclosure of confidential information pursuant to a protective order.  Therefore, the party requesting disclosure must make a strong showing of need, especially when confidential information from a non-party is sought."); *Med. Billing Consultants Inc. v. Intelligent Med. Objects,* No. 01 C 9148, 2003 WL 1809465, at *2 (N.D. Ill. Apr. 4, 2003) (refusing to order production of highly sensitive, commercial information despite presence of protective order, reasoning: "While a protective order may ensure the secrecy of the disclosed information, it will not alleviate all concerns related to the disclosure of the evidence.")

In the antitrust context, a court in another district conducted this same rigorous scrutiny and rejected a request for highly sensitive information from a non-party competitor of the defendants. In *In Re Vitamins Antitrust Litig.*, 267 F. Supp. 2d. 738, 742 (S.D. Ohio 2003), the court noted that, as with the AETN and NBCUniversal/SNY information sought here, the information there constituted "the life blood" of the non-party's "financial well being."  *Id.*  The fact that the defendants in the litigation were the non-party's "direct competitors only heighten[ed] the Court's first concern."  *Id.*  Without an adequate record in that litigation to support this intrusive discovery of a competitor's subpoena, the court decided the "wise course is to nip any potential economic harm," reject the protective order, and deny the discovery outright.  *Id.*

The record in this action does not support Viacom's request for compelled disclosure.  The Court therefore should enter an order denying the Motion to Compel as to disclosure of AETN's, NBCUniversal's, and SNY's confidential information and further order that Cablevision is not permitted to disclose any such information without further order of the Court.

## IV.    The Amended Protective Order Does Not Adequately Protect AETN's, NBCUniversal's, or SNY's Confidential Information.

As noted, Cablevision has refused to identify the universe of documents and information that may be disclosed to Viacom in this matter.  This fact makes the circumstances here

distinguishable from the vast majority of cases dealing with discovery from non-parties.  Unlike other cases, AETN and NBCUniversal/SNY remain unaware of the precise universe of documents to be provided, will not be permitted to make designations themselves, and will not be able to react quickly in the face of imminent public disclosure.  Further, contrary to the parties' suggestions, the Amended Protective Order's enhancements leave gaping holes in the protection of this confidential information.

A.      **The Amended Protective Order Allows Viacom and Cablevision to Control Designations and Disclosure.**

The parties compound this lack of transparency by proposing that the Court compel production and merely require compliance with a protective order that gives the parties discretionary and exclusive control over the designation of confidential information.  Under the Amended Protective Order, Cablevision has the sole option, but is not required, to attach heightened protections to this highly confidential information, and it may withdraw the protections whenever it wishes:

> Counsel for any Producing Party may designate as "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY" any Discovery Materials that contain or constitute competitively sensitive terms (including, but not limited to, pricing terms), contained in or negotiated as part of entering into an affiliation agreement between a programmer and a distributor. . . A Producing Party designating Discovery Materials as "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY" may withdraw such designation at any time.

(Dkt. No. 86 at ¶ 7) (emphasis supplied).  Moreover, the Amended Protective Order permits Viacom to challenge any designation and leaves it to Cablevision – which has already demonstrated that it will not, despite its contractual obligations to AETN and NBCUniversal, litigate to protect non-party confidentiality concerns – to contest any challenge.  The protective order does not even require Cablevision to notify non-parties of a challenge.  Nor does it preclude

17

Cablevision – as it has done here – from resolving that type of "dispute" by simply acquiescing to Viacom and removing the designation altogether.[3]

### B.    The Additional Notice Provision Does Not Protect Non-Parties.

While the parties have provided for notification prior to filing non-parties' confidential information with the Court (Dkt. No. 86 at ¶ 20(a)), this provision is utterly flawed and useless as a practical matter.  The onus would be on AETN or NBCUniversal/SNY to file appropriate documents to justify the sealing of court documents, yet the provision does not require that either party provide non-parties with copies of the sealed filing.  Additionally, the Amended Protective Order permits the Court to rule on the motion without knowing whether non-parties received notice and whether that notice actually described or attached what information would be filed.

Further, this notice provision simply puts the burden on AETN and NBCUniversal/SNY to seek protection every time documents will be filed, presuming that Viacom succeeds in contacting the proper entity to provide notice of the potential disclosure.

### C.    The Amendments Proscribing Disclosure to Counsel Involved in "Competitive Decision-Making" are Insufficient.

Contrary to Viacom's argument otherwise, the provision of the Amended Protective Order restricting access to outside counsel to those with no "substantial involvement" in competitive decision-making (*id.* at ¶ 15(a)) does nothing to alleviate AETN's and NBCUniversal/SNY's concerns.  The modifier "substantial" leaves discretion entirely in the hands of counsel for Viacom, a key competitor.  Moreover, the order leaves Viacom completely free to share its competitors' highly confidential information with outside counsel involved in the "provision of antitrust or

---

[3] While the Amended Protective Order permits parties for any particular discovery material to seek a higher level of protection than the highest levels of confidentiality provided, the provision is meaningless. (*Id.* at ¶ 11.) Cablevision has refused to provide the discovery material to AETN, NBCUniversal, or SNY so that the non-parties could even theoretically assert their rights.

18

litigation advice regarding those business decisions or any other issues."[4]  Thus, attorneys who provide antitrust or litigation advice to Viacom or any other competitor or business partner of AETN, NBCUniversal, or SNY will be free to access these documents and use the information to the non-parties' competitive disadvantage.

Further, the Amended Protective Order permits outside counsel's supporting personnel to have unrestricted access.  Thus, there is no indication as to how the outside law firm will ensure that the documents remain within the control group, or even how non-lawyers are expected to understand the restrictions on dissemination or storage of information within the law firm.

**D.      The Amended Protective Order Allows Industry Experts to View the Confidential Materials Even If Involved in "Competitive Decision-Making".**

Significantly, the Amended Protective Order's limitation regarding "Competitive Decision-Making" does not apply at all to outside litigation support vendors, testifying experts, non-testifying experts, consultants, and others who also will have access to the documents designated as "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY".  *See* § 15.b.  When analyzing the risk of disclosure to experts, several courts have noted the difficulty they would face in "compartmentalizing" this type of highly confidential information. Experts and attorneys appear and reappear in different antitrust and other disputes regarding affiliation agreements. As a practical matter, the courts wisely note that it is virtually impossible to "Chinese wall" information provided to a vendor in one matter from use by that vendor in another.  *See Litton Indus., Inc.,* 129 F.R.D. at 531 ("[T]his court is not sanguine that a protective order could be constructed to sufficiently maintain the confidential nature of this information… once an expert has digested this confidential information, it is unlikely that the expert will forget…. If the expert

---

[4] Outside counsel reviewing confidential information now are not even barred, by this Order's terms, from assisting clients with competitive decision-making in the future.  Instead, it merely states that the documents cannot be disclosed to attorneys *now* engaged in competitive decision-making.

is called upon two years after this litigation to assist a potential competitor … will he really be able to compartmentalize all he or she has learned and not use any of the information obtained...."); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 138 F.R.D. 530, 538 (C.D. Ill. 1991) (denying certain requests for highly sensitive information, even though "Highly Confidential," protective order was in place).  One court has noted that once knowledge of this highly confidential information has been gained, people cannot "perform a prefrontal lobotomy" on themselves. *Fleming Sales Co. v. Bailey,* 611 F. Supp. 507, 514 (N.D. Ill. 1985).

Further, the Amended Protective Order does not require Viacom to disclose to AETN and NBCUniversal/SNY the identities of these people, and AETN and NBCUniversal/SNY have no right or ability to object to these disclosures.  The Court should not allow AETN's, NBCUniversal's, and SNY's commercially sensitive information to be disclosed with such impunity.

## CONCLUSION

Viacom's Motion demanding disclosure of AETN's, NBCUniversal's and SNY's confidential and proprietary information should be denied.  AETN and NBCUniversal/SNY have demonstrated that the information sought is proprietary and confidential and that they would suffer significant harm if this information is disclosed.  Indeed, these non-parties entered into contractual relationships with Cablevision with the understanding that their confidential business information would be protected; yet Cablevision and Viacom wholly failed to narrow the scope of documents requested or engage in bona fide meet-and-confer discussions with the affected non-parties. Viacom's assertions as to relevancy in its Motion are vague and unsupported, and Viacom has failed to meet its burden of showing need and the lack of alternatives.  Further, despite its appearances, the Amended Protective Order does not actually offer protection to AETN or

20

NBCUniversal/SNY.  For these reasons, AETN and NBCUniversal/SNY ask that Cablevision be prohibited from disclosing any AETN or NBCUniversal/SNY confidential information without further order from the Court.

Alternatively, AETN and NBCUniversal/SNY ask the Court to order that:

- The parties must meet and confer to narrow the scope of discovery and meaningfully explore alternatives to the discovery of non-party confidential information;

- In advance of any disclosure to Viacom, Cablevision shall provide the documents and information to the objecting non-parties, with redactions, if necessary, to prevent each non-party from seeing another's confidential information;

- The parties and objecting non-parties will subsequently meet and confer; and

- The parties and objecting non-parties must report back to the Court within a prescribed time as to whether the issues are resolved or whether they will require the Court's further assistance.

Dated:  Washington, D.C.                    HOLLAND & KNIGHT LLP
        July 23, 2015

                                            _____/s/ Cheryl A. Feeley_____
                                            Cheryl A. Feeley (CF1441)
                                            Charles D. Tobin (*Pro Hac Vice* to be submitted)
                                            800 17th St. NW, Suite 1100
                                            Washington, DC 20006
                                            Tel: (202) 955-3000
                                            Fax: (202) 955-5564
                                            Email: cheryl.feeley@hklaw.com
                                            Email:  charles.tobin@hklaw.com

                                            *Counsel for Intervenors A&E Television Networks, LLC, NBCUniversal Media, LLC, and Sterling Entertainment Enterprises, LLC t/a SportsNet New York*