# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| CBS CORPORATION, et al.<br><br>*Petitioners*,<br><br>v.<br><br>FEDERAL COMMUNICATIONS COMMISSION,<br><br>*Respondents*. | )<br>)<br>)<br>)<br>)<br>)   No. 14-_____<br>)<br>)<br>)<br>)<br>)<br>) |
| In re CBS CORPORATION, et al. | )<br>)<br>)   No. 14-_____<br>)<br>) |

## DECLARATION OF DENISE DENSON

I, Denise Denson, hereby state as follows:

1.     I am an Executive Vice President with Viacom Media Networks, a division of Viacom International Inc. ("Viacom").  Like many other programmers and broadcasters, Viacom enters into affiliation agreements with content distributors, who agree to make video content offered by Viacom available to consumers through cable systems, direct broadcast satellite systems, or Internet Protocol Television service operators.

A-125

2.    As part of my duties, I have personal knowledge of Viacom's affiliation agreements, and I am involved in Viacom's efforts to negotiate the terms of those agreements with distributors. I am competent to testify about the matters described in this declaration.

3.    Viacom's affiliation agreements contain highly sensitive information that is central to Viacom's business strategy. The information in these agreements includes pricing and other highly proprietary business terms.

4.    For this reason, the terms of Viacom's affiliation agreements, including the price terms of those agreements, are among the most closely guarded information at Viacom. The confidentiality provisions of Viacom's agreements prohibit third parties from having access to the terms of those agreements, and they limit the universe of Viacom's own employees who are authorized to review the terms of those agreements.

5.    I understand that the Media Bureau of the Federal Communications Commission has issued orders that permit more than 240 individuals to access Viacom's affiliation agreements, along with competitively sensitive data, drafts, correspondence and other materials related to the negotiation of those agreements, as early as November 13, 2014. I also understand that numerous content distributors—including DISH Network, RCN, and CenturyLink—and a trade association that represent such distributors (the American Cable Association) have requested

– 2 –

A-126

access to Viacom's affiliation agreements and negotiation materials. Were it not for the Media Bureau's orders, none of the individuals who have requested access to Viacom's agreements would have a right to access those agreements.

6.    Viacom would suffer significant harm if the terms of its affiliation agreements with any distributor were disclosed to any other distributors or programmers.

7.    For example, because Viacom must negotiate separate affiliation agreements with numerous other content distributors nationwide, a distributor that knows the terms of Viacom's affiliation agreements with the parties to the proposed mergers would have an unfair advantage in negotiating its own agreement with Viacom. A distributor that knows the terms of Viacom's most significant affiliation agreements would have no incentive to negotiate or arbitrate reasonable rates or other terms and conditions during its contract negotiations.

8.    Similarly, if other programmers, broadcasters, or content owners learned the terms of Viacom's affiliation agreements, they could negotiate more favorable agreements of their own and act strategically to price and to market their own services. These companies could also undermine Viacom's own efforts to acquire popular programming rights at the expense of Viacom's business interests.

9.    As part of my job responsibilities, I would receive notice before any of Viacom's affiliation agreements were produced by a distributor to the Federal

A-127

Communications Commission.  As far as I am aware, Viacom's affiliation agreements were not made part of the public record or made available to any non-governmental entities in connection with the Federal Communication Commission's 2010-11 review of the Comcast-NBCUniversal merger.. Nor am I aware of any other proceeding before the Federal Communication Commission in which Viacom's affiliation agreements were disclosed to any third party, as the Media Bureau's orders would do here.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED:  November 10, 2014.

New York, New York

_____
DENISE DENSON

– 4 –

A-128